IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HECTOR HERNANDEZ and<br>CHARLES TERMINI, individually, and on behalf<br>of all others similarly-situated,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMIE RHEE, in her official capacity as<br>Commissioner of the Department of Aviation;<br>WILLIAM HELM, in his individual capacity;<br>JOSEPH ALESIA, in his individual capacity;<br>KEVIN MARTIN, in his individual capacity; and,<br>the CITY OF CHICAGO, as a municipal<br>corporation and as indemnitor,<br><br>    Defendants. | Case No. 18-cv-7647<br><br>The Honorable Judge John Z. Lee<br><br>Magistrate Judge<br>Mary M. Rowland |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' HELM'S AND
MARTIN'S PARTIAL MOTION TO DISMISS (DKT. 29) FOURTEENTH
AMENDMENT CLAIMS IN COUNTS 3 AND 5 OF
PLAINTIFFS' FIRST AMENDED COMPLAINT**

    NOW COME, HECTOR HERNANDEZ and CHARLES TERMINI ("Plaintiffs"), through undersigned counsel, Cass Thomas Casper, Esq., and Gianna Scatchell, Esq., and Respond in Opposition to Defendants' Partial Motion to Dismiss ("Motion") (Dkt. 29). For the following reasons, Defendant Helm's and Martin's Motion should be denied.

    **I.**     **Plaintiffs Are Not Stating A Privileges And Immunities Claim In Count 3 And Defendants Did Not Comply With This Court's Standing Order On Motion Practice Before Filing Their Motion, Which Would Have Absolutely Resolved This Issue.**

    Plaintiffs have not stated and have never intended to state a Privileges and Immunities-based claim in Count 3, but rather do and intended to state an Equal Protection retaliation claim, as discussed below. Plaintiffs were intending to emphasize the language of 42 U.S.C. § 1983,

stating "deprivation of any rights, privileges, or immunities." See 42 U.S.C. § 1983. While the words "equal protection" were unfortunately not used in Count 3, such were used several times in Count 5, which should have made clear the 14th Amendment basis for the claims in Counts 3 and 5. (Dkt. 13, FAC, ¶¶191, 192). While Count 3 should be interpreted as stating an Equal Protection Clause claim for its 14th Amendment basis, in addition to its First Amendment basis, Defendants certainly could have cleared up any confusion by a phone call or email to undersigned counsels, rather than filing a Motion to Dismiss. Indeed, this Court's Standing Order on *Motion Practice* specifically says that "Before filing a motion, the movant's counsel **must** ask opposing counsel whether there is an objection to the motion." (emphasis added).[1] Of course, Motions to Dismiss are generally opposed, but this particular issue was exactly the kind of resolvable issue that the pre-filing phone call would have absolutely resolved.

## II. Plaintiffs State Viable Equal Protection Clause Claims In Counts 3 And 5.

The next issue Defendants raise is whether or not Plaintiffs may state Equal Protection claims for retaliation in the political retaliation context. Case law in this jurisdiction supports that they may. For example, in *Pomozal v. City of Highland Park*, 2003 WL 1057813 (N.D. Ill. 2003), police officers sued their employer claiming political favoritism in the distribution of promotions, job assignments, job training, and otherwise by the administration against patrol officers who belonged to the officers' union or who complain of wrongdoing. *Id.* at *1. At the summary judgment stage, the Court in *Pomozal* found that a jury could conclude that the employer violated the plaintiffs'-officers' Equal Protection rights because of plaintiffs' statements on certain public issues. So too, in *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982), the Seventh Circuit held that a public paramedic with the Chicago Fire Department could

---

[1] *See Motion Practice*, https://www.ilnd.uscourts.gov/judge-info.aspx?4Qf5zc8loCI5U7rfMP9DHw== (accessed April 7, 2019).

2

state an Equal Protection claim for her termination where the disciplinary proceedings "represented an arbitrary, irrational decision to discriminate among the two paramedics," that is, where two similarly-situated employees were *intentionally and invidiously* treated differently. 686 F.2d 511 at 522-23. Given the intentional and invidious discrimination, the Court found that an Equal Protection claim was stated. *Id.* So too, *Olshock v. Village of Skokie*, 541 F.2d 1254 (7th Cir. 1976) involved discharged police officers who sued their employer for their discharge over engaging in a protest. The Court found that "contrary to the due process and equal protection clauses of the Fourteenth Amendment, the defendant board and its individual members acted in wholly arbitrary manner in purporting to distinguish between suspension and discharge…[a]ctually, they were distinguishing between employing or not employing counsel to represent the protest participants…[t]his was a suspect classification. . ." *Olshock*, 541 F.2d 1254 at 1260. *See also Esmail v. Macrane*, 862 F.Supp. 217, 224 (N.D. Ill. 1994); *Smiley v. Chicago*, 1991 WL 156208, *6 (N.D. Ill. 1991) (while recognizing that the Courts do not allow equal protection claims based on discretionary decisions to confer employment benefits on certain employees, the Court stated that "[i]f plaintiffs were denied administrative leave because of their race, religion, or *some other arbitrary classifications* (*see, e.g.*, *Olshock v. Village of Skokie*, 51 F.2d 1254 (7th Cir. 1976)), then they could state a cause of action for violation of their rights to equal protection of the laws.").

     In this case, Plaintiffs allege that they have protected whistleblower status based on reporting of political discrimination, and that they suffered retaliation and discrimination based on such status by the individual Defendants. (Dkt. 13, FAC, ¶¶165, 167, 168, 191, 192, 193). This is on-point with *Pomozal* and *Olshock*, where public employees were able to successfully proceed on Equal Protection retaliation-based claims for engaging in protest-like activity or

complaining of wrongdoing.  It is also on-point with *Ciechon* because the discrimination is alleged to be intentional and invidiously directed at Plaintiffs because of their protected status. (Dkt. 13, FAC, ¶¶5, 7, 167 (alleging bullying, intimidation, segregation, discrimination, and belittling), 168, 192, 193).  Like the officers in *Olshock*, Plaintiffs here are in a suspect classification based on the allegations that they are directly cooperating with the OIG investigation – engaging in whistleblowing -- and suffering extreme retaliation for it. (Dkt. 13, FAC, ¶¶47-49, 53-54).

Defendants cite *Boyd v. Illinois State Police*, 384 F.3d 888 (7th Cir. 2004) for their proposition that Plaintiffs cannot sue for retaliation under the Equal Protection Clause, yet that case involved claims of race discrimination under Title VII and for retaliation because one of the plaintiffs was involved in the *Boyd* suit.  *Id.* at 898-899.  *Boyd* only stands for the proposition that one cannot sue for retaliation for involvement in a lawsuit involving claims of race discrimination because Title VII creates the comprehensive remedial scheme for retaliation in such a context.  *Boyd* cited *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412 (7th Cir. 1988), and reaffirmed that "Congress would not have wanted a Title VII plaintiff to bypass the elaborate 'administrative procedures created by the statute. . .'"  *Yatvin*, 840 F.2d at 419.  *Boyd* concluded that the plaintiff was only bringing a Fourteenth Amendment claim because of his participation in litigation, which could be redressed under Title VII or the First Amendment, but not the Fourteenth Amendment.  *Boyd*, 384 F.3d at 898.  Defendants also cite *Tate v. Ancell*, 551 Fed. Appx. 877 (7th Cir. 2014), but, again, that case involved opposition to race discrimination redressable under Title VII.  *Tate*, 551 Fed. Appx. at 897-898.

If this case involved a race discrimination claim, Defendants Helm and Martin would be correct – Congress enacted a retaliation framework in Title VII to redress such retaliation.  But

4

this case does not involve retaliation for reporting of race discrimination and, thus, Plaintiffs do not have the benefit of the comprehensive remedial scheme in Title VII for their protected reporting as was available to the plaintiffs in *Boyd* and *Tate*. Plaintiffs concede that they bring claims under the First Amendment for retaliation. *See, e.g., Doyle v. City of Chicago*, 943 F.Supp.2d 815, 822 (N.D. Ill. 2013) ("To state a claim under § 1983 based on political affiliation, a plaintiff must allege facts that demonstrate (1) that their conduct was constitutionally protected; (2) that they suffered an actionable deprivation; and (3) that the protected conduct was the but for cause of the employer's actions."); *Powers v. Richards*, 549 F.3d 505, 509 (7th Cir. 2008); *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004); *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998); *Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009). However, Plaintiffs also have stated claims under the Fourteenth Amendment because they are alleged to be suffering retaliation because of their *suspect classification as whistleblowers/reporters*, akin to the plaintiffs in *Olshock* and *Pomozal*, without any compelling or even rational basis for the difference in treatment like the plaintiff in *Ciechon*. It is not just their protected speech activity for which Plaintiffs seek redress, but their very whistleblower status, which is a claim falling under the Equal Protection cases noted above. *See* Dkt. 13, FAC, ¶191 (noting the Equal Protection claim is brought "post-*Engquist*[2] for being in the historically-protected classification of whistleblowers").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Helm's and Martin's Partial Motion to Dismiss (Dkt. 29) in its entirety, and order such other relief as it deems just and proper.

---

[2] Defendants do not cite *Engquist* in their Motion to Dismiss.

5

Respectfully submitted,

*/s Cass T. Casper*
*/s Gianna Scatchell*

_____

Plaintiffs' Attorneys

*Cass T. Casper, Esq.*
TALON LAW, LLC
79 West Monroe Street, Suite 1213
Chicago, Illinois 60603
P: (312) 351-2478
F: (312) 276-4930
E: ctc@talonlaw.com

*Gianna Scatchell, Esq.*
Law Offices of Gianna Scatchell
360 West Hubbard, 1404
Chicago, Illinois 60654
P: (312) 243-3303
E: gia@lawfirm.gs

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 12, 2019, he caused to be served the accompanying *Plaintiffs' Response in Opposition to Defendants Helm and Martin's Partial Motion to Dismiss Counts 3 and 5 of the Amended Complaint* on counsel for all Defendants via this Court's CM/ECF filing system, and that counsel for all Defendants are registered e-filers.

| | |
|---|---|
| Howard Levine, Esq. | howard.levine@cityofchicago.org |
| Jessica Durkin, Esq. | jessica.durkin@cityofchicago.org |
| Juanita Rodriguez, Esq. | juanita@lawatjbr.com |
| Danielle A. Kirby, Esq. | danielle@lawatjbr.com |

*/s Cass T. Casper*

_____

One of Plaintiffs' Attorneys