IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HECTOR HERNANDEZ and<br>CHARLES TERMINI, individually, and on behalf<br>of all others similarly-situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WILLIAM HELM, in his individual capacity;<br>KEVIN MARTIN, in his individual capacity; and,<br>the CITY OF CHICAGO, as a municipal<br>corporation and as indemnitor,<br><br>    Defendants. | Case No. 18-cv-7647<br><br>The Honorable Judge John Z. Lee<br><br>Magistrate Judge Mary Rowland |

**PLAINTIFFS' MOTION TO DISQUALIFY CORPORATION COUNSEL FOR ETHICAL VIOLATIONS INVOLVING DIRECT CONTACT WITH PLAINTIFFS, WITNESS INTIMIDATION, WITHHOLDING AND SPOLIATION OF EVIDENCE, CIRCUMVENTING AUTHORIZED DISCOVERY AND CONFLICTS OF INTEREST**

NOW COME, HECTOR HERNANDEZ and CHARLES TERMINI ("Plaintiffs"), through undersigned counsel, Cass Thomas Casper, Esq., and move this Honorable Court for an order disqualifying Defendants' counsels, Jessica Durkin, Scott Crouch, and Corporation Counsel, from further representation in this matter for a repeated course of ethical violations ranging from direct contact with Plaintiffs through their clients, withholding discovery and spoliation of evidence, witness intimidation, circumventing the authorized discovery process, and being in a conflict of interest in representing the municipality at the same time as the individual defendants.

    **I.**    **Standards For Disqualification Of Attorneys.**

When determining whether to grant or deny a motion to disqualify an attorney, a trial court must consider that "[a]ttorney disqualification is a drastic measure because it destroys the attorney-client relationship by prohibiting a party from representation by counsel of his or her

choosing." *Schwartz v. Cortelloni,* 177 Ill.2d 166, 178 (1997); *see also Freeman Equipment, Inc. v. Caterpillar, Inc.*, 262 F.Supp.3d 631, 634 (N.D. Ill. 2017); *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982); *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). Because disqualification impacts the right to counsel of the client's choosing, disqualification is considered a drastic action to be taken by the court only where the Rules of Professional Conduct preclude continued representation. *Id.* Therefore, a trial court should grant a motion to disqualify an attorney only when absolutely necessary. *In re Estate of Klehm,* 363 Ill.App.3d 373, 377 (2006). In addition, the party seeking disqualification carries a heavy burden to prove that his motion for disqualification is not being brought as a tactical weapon to gain undue advantage in the litigation. *SK Handtool Corp. v. Dresser Industries, Inc.,* 246 Ill.App.3d 979, 989 (1993). Motions to disqualify opposing counsel are to be viewed with extreme caution since these motions can be used as a means to harass opposing counsel and interfere with the attorney-client relationship. *In re Estate of Wright*, 377 Ill. App. 3d 800, 804 (2007); *In re Estate of Klehm*, 363 Ill. App. 3d 373, 377 (2006).

**II.** **Timing Of This Motion.**

The undersigned had not previously been aware of the standards for disqualification of attorneys, nor was aware that the repeated ethical infractions that have been caused by the City Corporation Counsel throughout this case could have given rise to a motion such as this. Admittedly, this Motion comes on the heels of the City's own efforts to disqualify the undersigned but, in researching that Motion, the undersigned has become aware for the first time that, indeed, there is actually a substantial basis to seek disqualification of the City's lawyers in this case due to the repeated, ongoing, continuous, and incessant ethical infractions engaged in by Defendants and their lawyers that continue up to even the previous week. So too, Plaintiffs'

2

counsels' efforts to report ethical infractions[1] and problems with this litigation have fallen completely on deaf ears with Corporation Counsel, and been met with incredulity and ridicule throughout this case.

Accordingly, it is appropriate that the Court consider the full panoply of attorney conduct in this case, including that conduct engaged in and tolerated by the City's lawyers as it considers disqualification.

### III. Corporation Counsel Has Violated Rule 4.2 Resulting In Prejudice To Plaintiffs By Repeated Direct Contacts With Plaintiffs Through The Defendants In The Workplace.

Rule 4.2 of the Illinois Rules of Professional Conduct states that, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Ill. R. P. C. 4.2. **Comment 4 provides that "A lawyer may not make a communication prohibited by this Rule through the acts of another."** Ill. R. P. C. 4.2(4). The latter comment is key because that, in fact, is what has been happening, repeatedly, throughout this case since its inception.

Specifically, Defendants have engaged in direct communication with Plaintiffs throughout this case about the subject matter of this case with the knowledge of Corporation Counsel. Most notably, former Defendant Alesia approached Plaintiff Hernandez in the workplace on December 27, 2018 and engaged him in conversation for approximately 14 minutes. *Hernandez Declaration*, ¶¶3-4. Alesia pressured Hernandez to drop the lawsuit during this conversation, Alesia was upset during it, and Hernandez was uncomfortable during the conversation because Alesia was his boss and Hernandez had no choice but to speak with Alesia.

---

[1] There is some contemporaneous thinking that *In re Himmel* requires reporting of the rampant ethical infractions by the City's attorneys to the ARDC.

*Hernandez Declaration*, ¶¶3-4. A screenshot from the December 27, 2018 video recording of this is reprinted here (Hector is in the orange vest, Alesia is in the suit):



*See Ex. 1*. The incident was made a part of the First Amended Complaint. *FAC*, ¶ ¶74-77. Subsequent to this incident, Corporation Counsel did nothing whatsoever to stop further direct contacts, despite having knowledge of an ongoing problem with it. Since the filing of the lawsuit, Termini and Hernandez have been approached by associates of Bill Helm and asked to drop the lawsuit. As one example, the week of July 10, 2019, Nick Thome approached Charles Termini to relay a message from Bill Helm, to wit, that Bill Helm wanted Termini to stop the investigations and end the lawsuit. *Termini Declaration*, ¶2. As another example, Hernandez was approached by Benji Rivera on or about July 16, 2019, who relayed a message from Bill

4

Helm that if Hernandez would drop the lawsuit, Hernandez would be rewarded. *Hernandez Declaration*, ¶2. As yet another example, in the week of August 8, 2019, Termini was approached by Nick Thome and advised that Helm was promising to take care of Termini if he would drop the lawsuit and that there would always be a place in the Training Section for Termini if he did so. *Termini Declaration*, ¶3. On July 19, 2019, Plaintiffs also reported this direct contact to the Corporation Counsel but were met with disdain, incredulity, and ridicule. *Termini Declaration*, , ¶3. The behavior has not stopped despite being reported to Corporation Counsel.

Defendants' counsels have gained a direct advantage in this litigation as a result of the prohibited direct contact. This includes because they now have a witness, Joseph Alesia, who will claim that Hernandez told him that he "knew Joe was not political" and was going to "drop the lawsuit," during the December 2018 interaction described above. *Hernandez Declaration*, ¶4. Hernandez, of course, totally denies saying this, but it is now an issue because of the prohibited direct contact. *Hernandez Declaration*, ¶4. So too, Hernandez did not have any choice but to talk to Alesia given that Alesia is one of his supervisors and this occurred in the workplace. *Hernandez Declaration*, ¶4. Because of this direct contact, the City of Chicago will now have a witness who will say that Hernandez said this, even though no direct contact ever should have been had or allowed. Accordingly, the direct contact has concocted an allegation favorable to the City, that Hernandez must now rebut, and that never would have been present but for the prohibited contact. Worse still, the City has done nothing to correct this behavior, except to meet the claims of direct contact with incredulity and ridicule. *Termini Declaration*, ¶3.

Accordingly, due to the ethical violation and the prejudice resulting from it, the Corporation Counsel should be disqualified. Indeed, this is the only remedy because

5

Corporation Counsel, Jessica Durkin, and Scott Crouch, have shown an utter unwillingness to correct the behavior of their clients, or to take the allegations seriously, and all of this has resulted in severe prejudice to the case.

**IV.    Corporation Counsel Has Engaged In Witness Intimidation With Respect To Nick Thome Specifically, And Plaintiffs Throughout This Case, In Violation Of Rules 3.4 And 4.4.**

Rule 3.4 of the Illinois Rules of Professional Conduct states that "A lawyer shall not: (b) . . .counsel or assist a witness to testify falsely. . ." Rule 4.4 of the Illinois Rules of Professional Conduct states that "In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person." Ill. R. P. C. 4.4(a).

1. Specific Intimidation And Pressuring With Respect To Nick Thome.

In this case, Nick Thome approached Termini at the time clock on or about September 9, 2019, and advised Termini, words to the effect, that "the Law Department was harassing him to sign a document," that he had "received numerous phone calls from the Law Department about the document," that he was "uncomfortable signing the document," and "he was scared and did not know what to do." *Termini Declaration*, ¶5. Nick Thome has relayed to Termini that he is also currently under investigation by the City's Office of the Inspector General relating to receiving and selling Cubs tickets from third-party vendors in the scope of his employment, and he has advised Termini that he was just interviewed by the OIG in August 2019, and is under a great deal of stress about the investigation. *Termini Declaration*, ¶6. Accordingly, the Law Department's actions (1) have subjected Thome to undue pressure, and (2) been placed upon Thome during a time when he is subject to pressure due to being under investigation by the City's OIG. This is wholly improper by the Law Department and constituted improper witness

6

tampering and influencing the evidence and witness to give testimony while concurrently and actively under pressure of an OIG investigation.

      2.   <u>Intimidation With Respect To Plaintiffs And Their Counsels As Reflected In Dkt. 64.</u>

The acts described in the prior section on direct contact all comprise witness intimidation. Permitting their Clients to repeatedly approach Hernandez and Termini, either personally or through associates, has had the effect of intimidating Hernandez and Termini and chilling their desire to pursue this lawsuit. Actual prejudice has resulted from the City's tactics with respect to Thome, Hector, Charles, and the undersigned, because it obtained a declaration from Thome that it is now using to attempt to disqualify the undersigned in this case. So too, Hector and Charles are under extreme pressure to drop the suit as a result of the City's conduct and its toleration of the hostile work environment.

So too, Dkt. 64 in this case includes multiple exhibits and accounts of specific acts of intimidation that have occurred throughout this case, ranging from Hernandez receiving the "cock" and "gay pride" voicemail (Dkt. 64, Ex. 3), to Termini being called a "Jagoff" (Dkt. 64, Ex. 4), to the Union being allowed to access the workplace and create divisions against the Plaintiffs and post its defamatory letter (Dkt. 64, Ex. 7), to Plaintiffs being mocked and ridiculed via memes, Social Media, and in the workplace such as being subjected to farting and bathroom noises on the radio (Dkt. 64, Exs. 9-11), to Hernandez being assigned bedbug ridden trucks (Dkt. 65). All of this has been reported to the City of Chicago Corporation Counsel, specifically to Jessica Durkin and Scott Crouch. *See Termini Declaration*, ¶3. Yet, the harassing actions continue to occur on an approximate biweekly basis as to each of the Plaintiffs.

All of these issues can be laid at the feet of Corporation Counsel, who has ignored complaints and concerns, met them with ridicule and incredulity, and done nothing to stop these

tactics. Because these lawyers have expressed no concern whatsoever for the well-being of the workforce their purportedly should be working for, have allowed and tolerated witness intimidation and harassment, the Court has no choice but to require that the Defendants have alternative counsel who will take this case seriously. Accordingly, due to the ethical violation and the prejudice resulting from it, the Corporation Counsel should be disqualified from this case.

**V.    Corporation Counsel Has Failed To Maintain Video Evidence Crucial To This Case In Violation Of Rule 3.4.**

The Law Department has engaged in spoliation by failing to maintain a videotape of the alleged December 26, 2018 interaction between Hernandez and Alesia. *See Ex. 2 (Rodriguez Letter)*. The relevant excerpt of the City's letter admitting the video tape was not kept is as follows:

> As you will see in the MIDP production we have produced the videos provided to us by the City of Chicago. It has come to our attention that when the videos were requested there was a typo in the name of one of the videos requested which resulted in the wrong video being provided. Because this error was not caught on time, the original and correct video was recorded over. As such, the only relevant video is LDG-502-AMC-Bay B-East-Dispatch Office 8:00 – 8:15. Please see Alesia's supplemental MIDP response number 3 for corresponding bates range. However, all the videos received by our office are produced in good faith and for your review.

*Ex. 2,* p. 2. The explanation given by City attorneys is patently false because Howard Levine contacted the undersigned following the December 2018 direct contact, so the City obviously knew about the tape in December 2018, knew it had to preserve the tape, and months later it is finally revealed that the tape was destroyed. The failure to preserve this videotape constitutes at least negligent, if not intentional, spoliation of evidence. It also constitutes a violation of Rule 3.4(a), stating that "A lawyer shall not: (a) unlawfully obstruct another party's

8

access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value." Ill. R. P. C. 3.4(a). This has resulted in obvious prejudice to Plaintiff Hernandez because the City is now claiming – intertwined with its inappropriate direct client contact – that Hernandez made statements and engaged in conduct harmful to this suit, but did not preserve the video evidence that would obviously rebut this. Accordingly, due to the ethical violation and the prejudice resulting from it, as well as the Corporation Counsel's bevy of other ethical violations in this case that demonstrate an unwillingness to correct their behavior, the Corporation Counsel, Jessica Durkin, and Scott Crouch should be disqualified from this case.

**VI.     Corporation Counsel Has Withheld Evidence In Violation Of Rules 1.3 And 3.4 And This Court's MIDP Standing Order.**

Plaintiffs served discovery requests on Defendants on April 17, 2019 seeking emails and text messages from the individual Defendants. At an ESI conference, the parties agreed upon further limitations on search terms and custodians. However, as of this Motion, the first emails and texts produced were given on September 12, 2019, and they constituted almost entirely *spam* emails (such as emails from campaigns seeking money) that are of no use whatsoever. So too, Defendant Alesia's previous document production has email printout dates at the top of February 2019 at the top, yet they were not produced to the Plaintiff's until July 23, 2019, with no explanation given for the withholding of these documents for such a long period of time. For example, here is a sample document from Alesia's document production, showing that either he or his attorneys had these emails on or about 2/10/2019:

9

> 2/10/2019                                                          Mail - Joseph Alesia - Outlook
>
> **Re: OIG Interviews**
>
> William Helm
> Tue 7/24/2018 5:33 PM
> To: Dawna Harrison <Dawna.Harrison@cityofchicago.org>
> Cc: Joseph Alesia <Joseph.Alesia@cityofchicago.org>
>
> ==Dawna, I'll make the notification to these drivers. This should've been sent to me and I could push out as I decide. Unless this was a directive to send to Joe? Please advise.==
>
> Thanks
>
> Sent from my iPhone

*See Ex. 3*. Despite the upper left-hand corner date of "2/10/2019," this document was not produced to Plaintiffs' counsels until July 23, 2019, which is months after the MIDP disclosure date, and months after Plaintiffs' sent their discovery requests to Defendants on April 17, 2019. Under the MIDP, disclosures are to be made within 30 days after gaining knowledge of the existence of information. *See* MIDP Standing Order, ¶6 ("A party must serve such supplemental responses in a timely manner, ***but in no event later than 30 days*** after the information is discovered or revealed to the party." (emphasis added)). Why were these crucial emails from Defendant Alesia withheld until July 23, 2019, if they were printed out or obtained on February 10, 2019? And this matters, too, because the direct contact allegation surfaced on July 19, 2019, just days before these emails were finally disclosed to Plaintiffs' counsels on July 23, 2019. *Someone* was, therefore, likely stressed about having provided these documents.

Further, the non-disclosure of this email severely hampered this case, because, had it been disclosed earlier, Alesia more than likely would have been dismissed from the lawsuit at an earlier date, and the course and trajectory of this lawsuit altered, as the emails demonstrate that Defendant Helm was requiring that all OIG Interview Notifications go through him so that he could influence the investigations.

10

These tactics and behavior violate Rule 1.3, stating "A lawyer shall act with reasonable diligence and promptness in representing a client." Ill. R. P. C. 1.3. They also violation Rule 3.4, stating "A lawyer shall not: (1) unlawfully obstruct another party's access to evidence . . .(d) in pretrial procedure. . .fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Ill. R. P. C. 3.4(a), (d). The problem is that the text messages and emails are among the key evidence in this case. For example, the following text message between Helm, Thome, and Martin was uncovered by Plaintiff's counsels:



*See Ex. 4.* Despite that email and text evidence is known to exist, Defendants have produced nothing relevant since the discovery requests were issued on April 17, 2019, except for spam emails to the Defendants from candidates.

**VII. The City Of Chicago Is Circumventing The Established Discovery Rules 26 Through 37 By Conducting A Secret Investigation Into Hernandez Simultaneously With This Lawsuit.**

In addition to all of the foregoing problems, the City of Chicago is circumventing the discovery process by sending out a third-party subpoena – and possibly others – to obtain information about Hernandez' financial records that is potentially relevant to the claims in this

11

suit, without giving notice to Plaintiffs or their counsels. *See Ex.* 5. This is an unauthorized circumvention of the established discovery rules and, frankly, is cheating.[2]

While Plaintiffs' attorneys cannot locate an exact case in this District dealing with this issue, a Court in the Fifth District hit the nail on the head with the problem presented here. In *SEC v. Life Partners Holdings, Inc.*, 2012 WL 12850253 (W.D. Texas, 2012), the Court confronted whether a deposition conducted by the SEC of a non-party witness while the Complaint was pending, but before the parties' Rule 26(f) conference occurred, was a sanctionable violation of the Federal discovery rules. *Id.* at *1. The Court observed as follows:

"Administrative agencies, however, are "unquestionably bound" by the FRCP when they are parties in civil actions. *FTC v. Turner,* 609 F.2d 743, 745 n.3 (5th Cir. 1980). Rule 26(d)(1) of the FRCP prevents parties from seeking discovery before the Rule 26(f) conference has taken place. Rule 30(a)(2)(A)(iii) requires parties to seek leave of court in order to take a deposition before the Rule 26(f) conference. Under Rule 30(b)(1), parties are required to provide notice to every other party before taking a deposition. The Court is granted authority to impose an appropriate sanction on a person who frustrates the fair examination of a deponent under Rule 30(d)(2).

*Id.* The Court then ruled that "if the deposition [of the third party] was not part of a purely administrative investigation unrelated to the present case against Defendants, then it was subject to the FRCP." *Id.* at *2. Because a large portion of the questions and answers in the deposition related to the allegations in the Complaint, the Court found that the SEC was subjected to the FRCP and could not use its own investigative tools to circumvent the FRCP. *Id.* The Court aptly reasoned as follows about this:

"Plaintiff cannot administer an extra-judicial deposition regarding an investigation, elicit testimony during that deposition regarding allegations made in the Complaint for use against Defendants, and then claim immunity from the FRCP by labeling the deposition as "investigative."

---

[2] There was a discussion with counsel in this case in which the City promised to confirm if the investigation was related to this lawsuit. Plaintiffs aver that there is simply no way that the investigation is not intermingled with this lawsuit as it exposes Hernandez' finances – and, potentially, statements -- to the OIG in a way that can be ultimately accessible to the Law Department once completed and, potentially, used against Hernandez. *See MCC 2-56-060* (providing that relevant investigative information, along with an SRI, shall be provided to the head of each department or agency affected by or involved in the investigation) (https://igchicago.org/wp-content/uploads/2014/03/OIG-Rules-and-Regulations.pdf (accessed September 12, 2019)).

12

The deposition was clearly intended to elicit testimony regarding allegations made against Defendants in the Complaint, and was subject to the FRCP."

*Id.* at *3. So too, this Court has repeatedly held in the context of FOIA requests that the parties are only entitled to that discovery provided by the rules applying their suit. *Kanter v. Dep't of Justice*, 433 F. Supp 812, 816 (N.D. Ill. 1977); *Davenport v. Comm'r of Internal Revenue*, 1986 WL 8965, *1 (N.D. Ill. 1986) ("Disclosure of information that would circumvent the criminal discovery rules is not allowed under FOIA."). In other words, the parties to litigation cannot use FOIA to circumvent the discovery rules and limitations laid down by the FRCP, nor should they be able to use the investigative powers of the OIG to do so.

In no way, shape, or form, is the subpoena for Hernandez' bank records from May 1, 2017 through May 1, 2019 unrelated to the allegations in this lawsuit. This suit is alleging ethical violations and misconduct against City employees at the Department of Aviation. Hernandez has alleged that he has provided information to the OIG tending to support same. The lawsuit seeks back pay for lost overtime and other make whole relief, and, to that extent, mitigation, other earnings, and Plaintiff's finances are discoverable in this suit. Hernandez further avers that he is willing to provide the information requested, but wants the Defendant City to comply with the FRCP regarding discovery. Hernandez believes this information should be produced in the context of this lawsuit, and not through underhanded subpoenas for documents sent behind his back with no notification.

### VIII. Corporation Counsel Has Inherent Conflicts Of Interest Representing The Municipality And The Individual Defendants.

In this case, Defendant City of Chicago is arguably able to avoid liability for the conduct of the individual Defendants by showing that they were acting outside of the scope of their employment, while the individual Defendants are likely to claim that their actions are immune

13

from liability because all taken within the scope of their employment. Indeed, Defendants Helm and Martin have asserted immunities based on holding discretionary positions as an affirmative defense in their Answers. *See* Dkt. 31, p. 48, ¶3; Dkt. 28, p. 53, ¶3. At the same time that the individual Defendants have asserted immunity as affirmative defenses in their Answers, the municipality has asserted that "The City is not liable for an injury caused by an oral promise or misrepresentation by its employee, whether or not such promise or misrepresentation is negligent or intentional 745 ICLS [*sic*] 10-2-2-106." *See* Dkt. 32, p. 49, ¶5. The City has also asserted that "The City is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information either orally, in writing, by computer or any other electronic transmission." *See* Dkt. 32, p. 49, ¶6.

It is well-established that, "[w]hen, for example, an individual officer and a municipality are sued jointly under Section 1983, an attorney representing both defendants is often caught between a rock and a hard place: A good faith immunity defense for the former may directly undermine an 'outside the scope of employment' defense for the latter (or vice versa)". *Guillen v. City of Chicago*, 956 F.Supp.1416, 1424 (N.D. Ill. 1997); *see also, e.g., Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 341 (2d Cir. 1986). The foregoing defenses cannot be effectively advocated for by the same attorneys on behalf of the City of Chicago and on behalf of the individual Defendants.

Accordingly, this is an entirely alternative basis to disqualify Corporation Counsel from joint representation of the individual Defendants and the City of Chicago.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion and enter an order disqualifying Corporation Counsel from representation in this case, and for such other relief as the Court deems just and proper.

Respectfully submitted,

*/s Cass T. Casper*

By: _____
One of Plaintiffs' Attorneys

*Cass T. Casper, Esq.*
TALON LAW, LLC
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
P: (312) 351-2478
F: (312) 276-4930
E: ctc@talonlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 16, 2019, he caused to be served the accompanying *Plaintiffs' Motion to Disqualify Corporation Counsel* on counsel for all Defendants via this Court's CM/ECF filing system, and that counsel for all Defendants are registered e-filers.

| | |
|---|---|
| Scott Crouch, Esq. | scott.crouch@cityofchicago.org |
| Jessica Durkin, Esq. | jessica.durkin@cityofchicago.org |

*/s Cass T. Casper*
_____