**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| HECTOR HERNANDEZ and CHARLES TERMINI, individually, and on behalf of all others similarly-situated, | |
| Plaintiffs, | Case No. 18-cv-7647 |
| v. | The Honorable Judge John Z. Lee |
| WILLIAM HELM, in his individual capacity; KEVIN MARTIN, in his individual capacity; and, the CITY OF CHICAGO, as a municipal corporation and as indemnitor, | Magistrate Judge Sidney Schenkier |
| Defendants. | |

**PLAINTIFFS' MOTION TO COMPEL RESPONSES TO REQUESTS FOR ADMISSION
AND/OR TO DEEM EVASIVE ANSWERS ADMITTED**

NOW COME, Plaintiffs, Hector Hernandez and Charles Termini, through their undersigned attorneys, Cass T. Casper, TALON LAW, LLC, and Gianna Scatchell, Esq., Law Offices of Gianna Scatchell, and move this Honorable Court to compel responses to Defendant William Helm's Requests for Admission for the following reasons.

1. Plaintiffs served the attached Requests for Admission on counsel for Defendant Helm on September 21, 2019.

2. Defendant Helm requested until October 25, 2019 to answer, which Plaintiffs' counsel, without any reason or cause other than being collegial, agreed to.

3. On October 25, 2019, Defendant Helm served responses and objections to the Requests for Admission on undersigned counsel that almost completely, albeit with some exceptions, stated that insufficient information was available. Such response was done even though information sought to be admitted was attached as Exhibits to the Requests.

4. Also on October 25, 2019, outside counsel from Michael Best Friedrich filed a motion to substitute counsel on behalf of Bill Helm, putting them in the position of having adopted Defendant Helm's Responses. To the same, it is unclear why outside counsel would enter an appearance on behalf of Bill Helm on the same date City Corporation Counsel would serve answers to requests for admission.

5. There is no basis whatsoever for the City or Helm to have denied having knowledge of the information sought to be admitted, as is demonstrated by any review of the attachment.

6. Based on the foregoing, Plaintiffs request that this Court enter an order directing Defendant Helm to answer to the Requests for Admission with admissions or denials within seven (7) days hereof, or deem his responses admitted for purposes of this litigation.

WHEREFORE, for the foregoing reasons, Plaintiffs request that this Court grant the relief sought in this Motion, *to wit*, an order requiring Defendant Helm to answer the Requests for Admission within seven (7) days hereof, or deem same admitted for purposes of this litigation.

Dated: October 25, 2019

*/s Cass T. Casper*

_____

Cass T. Casper
One of Plaintiff's Attorneys
TALON LAW, LLC
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
P: (312) 351-2478
F: (312) 276-4930
E: ctc@talonlaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he served this Plaintiffs' Motion to Compel Responses and all accompanying documents on the below-listed attorneys by electronic mail and Dropbox link on October 25, 2019.

Scott Crouch, Esq.          scott.crouch@cityofchicago.org
Jessica Durkin, Esq.        jessica.durkin@cityofchicago.org

*s/ Cass T. Casper*

_____

Cass T. Casper

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

HECTOR HERNANDEZ and CHARLES
TERMINI, individually, and on behalf of all others
similarly situated,,

        Plaintiff,

vs.

WILLIAM HELM, in his individual capacity;
KEVIN MARTIN, in his individual capacity; and,
the CITY OF CHICAGO, as a municipal
corporation and indemnitor,,

        Defendant.

Case No. 18-cv-7647

Judge: John Z. Lee

Magistrate: Sidney Schenkier

## DEFENDANT WILLIAM HELM'S RESPONSE
## TO PLAINTIFF'S FIRST REQUESTS TO ADMIT

Defendant William Helm, by his attorney Mark A. Flessner, Corporation Counsel of the

City of Chicago ("the City"), submits the following responses to Plaintiff's First Rule 36 Requests

to Admit.

## OBJECTIONS TO INSTRUCTIONS

1.     If Defendant fails to respond or object to any request within 30 days of the service of these Requests, the matter shall be deemed admitted under Rule 36.

**RESPONSE: Defendant Helm objects to this instruction as it is narrower than the**

**procedure set forth in Fed. R. Civ. P. 36.**

2.     Requests are continuing and supplemental answers are required if you obtain further information after your initial responses.

**RESPONSE: Defendant Helm objects to this instruction as it is inconsistent with the**

**procedure set forth in Fed. R. Civ. P. 36 and Fed. R. Civ. P. 26(e).**

3.     In the event you assert any form or objection or privilege as a ground for not answering a Request, set forth the legal grounds and facts upon which the objection or privilege is based.

**RESPONSE**: Defendant Helm objects to this instruction as it is inconsistent with the procedure set forth in Fed. R. Civ. P. 36(a)(5).

4.      For each request, identify the person answering the request by name and position with Defendant.

**RESPONSE**: Defendant Helm objects to this instruction as it is inconsistent with the procedure set forth in Fed. R. Civ. P. 36.

## SPECIFIC REQUESTS FOR ADMISSION

1.      Admit that the email attached as Exhibit A, Bates-labeled Alesia's MIDP Production 8-9, is a true, accurate, and complete copy of the email you sent on 7/24/2018 at 5:33 p.m.

**RESPONSE**: Defendant Helm admits that on 7/24/2018 on about at 5:33 p.m. he sent an email with the following text: "Dawna, I'll make the notification to these drivers. This should've been sent to me and I could push out as I decide. Unless this was a directive to send to Joe? Please advise." Defendant Helm denies that he sent the remaining emails reflected in Exhibit A to Plaintiff's First Requests to Admit.

2.      Admit that you wrote the words "Dawna, I'll make the notification to these drivers. This should've been sent to me and I could push out as I decide. Unless this was a directive to send to Joe? Please advise." in the email attached as Exhibit A.

**RESPONSE**: Defendant Helm admits that on 7/24/2018 on about at 5:33 p.m. he sent an email with the following text: "Dawna, I'll make the notification to these drivers. This should've been sent to me and I could push out as I decide. Unless this was a directive to send to Joe? Please advise."

3.      Admit that "these drivers" you were referring to in Exhibit A were Hector Hernandez, Charles Termini, and Tomasz Dorosz.

**RESPONSE**: Admit.

4.      Admit that on or about July 26, 2018, you accompanied Plaintiff Hector Hernandez to the vehicle driving him to his OIG interview.

2

<u>RESPONSE</u>: **Deny.**

5.     Admit that on or about July 27, 2018, you accompanied Plaintiff Charles Termini to the vehicle driving him to his OIG interview.

<u>RESPONSE</u>: **Deny.**

6.     Admit that on July 30, 2018 you accompanied Tomasz Dorosz to the vehicle driving him to his OIG interview.

<u>RESPONSE</u>: **Deny.**

7.     Admit that you sent the text message attached as Exhibit B on October 27, 2016.

<u>RESPONSE</u>: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

8.     Admit that the text message attached as Exhibit B is a true, accurate, and complete copy of the text message you sent on October 27, 2016.

<u>RESPONSE</u>: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

9.     Admit that in the text message attached as Exhibit B you wrote "Guys-we will be going out on our second canvass for Jack Franks for McHenry County Chairman this Saturday October 29th-10:30 am. We're going to be in Algonquin and will meet at: Panera Bread 2484 N. Randall Rd Elgin, Illinois 60123 Thanks as always gentlemen! Pat O'Connor-Bill Helm"

<u>RESPONSE</u>: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

10.    Admit that you sent the text message attached as Exhibit B to, among other people, City of Chicago employees.

3

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

11. Admit that you sent the text message attached as Exhibit B to, among other people, Tomasz Dorosz.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

12. Admit that you sent the text message attached as Exhibit B to, among other people, Lisa Ellerman.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

13. Admit that you sent the text message attached as Exhibit B to, among other people, Oscar Polanco.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

14. Admit that you sent the text message attached as Exhibit B to, among other people, John Revere.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

15. Admit that you sent the text message attached as Exhibit B to, among other people, Nick Thome.

4

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

16. Admit that you sent the text message attached as Exhibit B to, among other people, Edward Dickman.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

17. Admit that you sent the text message attached as Exhibit B to, among other people, Douglas Miller.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

18. Admit that you sent the text message attached as Exhibit B to, among other people, John Fasso.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

19. Admit that you sent the text message attached as Exhibit B to, among other people, Russ Zizzo.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

20. Admit that you sent the text message attached as Exhibit B to, among other people, Michael Bertoni.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

21.　Admit that you sent the text message attached as Exhibit B to, among other people, Joseph Mannerino.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

22.　Admit that you sent the text message attached as Exhibit B to, among other people, Gina Michalik.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

23.　Admit that you sent the text message attached as Exhibit B to, among other people, Brian Pagani.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

24.　Admit that between October 2016 and December 2018 you worked for Pat O'Connor.

**RESPONSE**: Defendant Helm objects to this request on the grounds that it is not capable of a reasonable response, insofar as the phrase "worked for Pat O'Connor" is vague, ambiguous, and subject to multiple interpretations. Subject to, and without waiving said objections, Defendant Helm denies this request.

25.　Admit that when you sent the text message attached as Exhibit B you were working for Pat O'Connor.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny that he sent the text message attached as Exhibit B to Plaintiff's Request to Admit. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

26.    Admit that you sent the text message attached as Exhibit C on September 24, 2016.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

27.    Admit that the text message attached as Exhibit C is a true, accurate, and complete copy of the text message you sent on September 24, 2016.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

28.    Admit that in the text message attached as Exhibit C you wrote, "To all-We've been asked to go door to door in the same precincts that we did several weeks ago for the Re-Election of State Senator Tom Cullerton. Please contact and pick up material from this Monday & Tuesday from Nick Thome-8608 W. Brodman P-773-410-6831 We're asking to have the material returned by Thursday October 6th. Thanks for your help on this very important election!! Bill Helm"

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

29.    Admit that you sent the text message attached as Exhibit C to, among other people, City of Chicago employees.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

7

30.     Admit that you sent the text message attached as Exhibit C to, among other people, Tomasz Dorosz.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

31.     Admit that you sent the text message attached as Exhibit C to, among other people, Lisa Ellerman.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

32.     Admit that you sent the text message attached as Exhibit C to, among other people, Oscar Polanco.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

33.     Admit that you sent the text message attached as Exhibit C to, among other people, John Revere.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

34.     Admit that you sent the text message attached as Exhibit C to, among other people, Nick Thome.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

35.     Admit that you sent the text message attached as Exhibit C to, among other people, Edward Dickman.

8

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

36. Admit that you sent the text message attached as Exhibit C to, among other people, Douglas Miller.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

37. Admit that you sent the text message attached as Exhibit C to, among other people, John Fasso.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

38. Admit that you sent the text message attached as Exhibit C to, among other people, Russ Zizzo.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

39. Admit that you sent the text message attached as Exhibit C to, among other people, Michael Bertoni.

**RESPONSE**: **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

40. Admit that you sent the text message attached as Exhibit C to, among other people, Joseph Mannerino.

9

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

41. Admit that you sent the text message attached as Exhibit C to, among other people, Gina Michalik.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

42. Admit that you sent the text message attached as Exhibit C to, among other people, Brian Pagani.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

43. Admit that the CATA Overtime Edit Form attached as Exhibit D is a true, accurate, and complete copy of the CATA Overtime Edit Form that has been used at the Department of Aviation.

**RESPONSE**: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objection, Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

44. Admit that your job title was Deputy Commissioner while the CATA Overtime Edit Form attached as Exhibit D was used at the Department of Aviation.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

10

45.     Admit that the phrase "Deputy Cmsr." used on the CATA Overtime Edit Form attached as Exhibit D refers to Deputy Commissioner.

**RESPONSE: As stated in previous requests related to Exhibit D, Defendant Helm lacks knowledge or information sufficient to admit or deny whether Exhibit D was a form used at the Department of Aviation. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny whether Exhibit D was a form used at the Department of Aviation. Defendant Helm admits that while he was Deputy Commissioner at the Department of Aviation "Deputy Cmsr" was an abbreviation used to refer to his position.**

46.     Admit that the photographs attached as Group Exhibit E depict the entrance to the Dispatch Office and bulletin boards outside of the Dispatch Office.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Defendant Helm further object to this request as Exhibit E shows multiple different pictures of different things and is a compound request in violation of Fed. R. Civ. P. Rule 36(a)(2). Subject to and without waiving the same objection, Defendant Helm admits that it does appear that some of the pictures show the dispatch office and other pictures show bulletin boards, some of which appear to be bulletin boards that were outside the dispatch office during Defendant Helm's tenure with the Department of Aviation.**

47.     Admit that the photographs attached as Group Exhibit E depict the bulletin board that the City authorizes Teamsters Local 700 to utilize.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Defendant Helm further object to this request as Exhibit E shows multiple different pictures of different things and is a compound request in violation of Fed. R. Civ. P. Rule 36(a)(2). Subject to and without waiving the same objection, Defendant**

11

Helm admits that it does appear that some of the pictures show the dispatch office and other pictures show bulletin boards, some of which appear to be bulletin boards that were outside the dispatch office during Defendant Helm's tenure with the Department of Aviation and that during his tenure with the Department of Aviation the Teamsters Local 700 did post in one of the bulletin boards.

48.     Admit that you authorized Teamsters Local 700 representatives to post a letter from Local 700 now former President Becky Strzechowski that references the instant lawsuit.

**RESPONSE: Defendant Helm denies the request.**

49.     Admit that you authorized Teamsters Local 700 representatives to maintain a letter from Local 700 now former President Becky Strzechowski that references the instant lawsuit from in or about December 2018 through the date you left the City's employment.

**RESPONSE: Defendant Helm denies the request.**

50.     Admit that Teamsters Local 700 does not own the bulletin board depicted at page 1 of Group Exhibit E.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objection, Defendant Helm admits that during his employment as Deputy Commissioner of the Department of Aviation, Teamsters Local 700 did not own the bulletin board depicted at page 1 of Group Exhibit E, but that they were permitted to post there.**

51.     Admit that the City of Chicago owns the bulletin board depicted at page 1 of Group Exhibit E.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objection, Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

52.    Admit that page 6 of Group Exhibit E depicts a whiteboard with movable magnets depicted as follows, which is excerpted from page 6 of Group Exhibit E:



**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objection, Defendant Helm admits that the photograph at page 6 of Group Exhibit E and reproduced as part of Request 52 appears to depect a whiteboard with movable magnets.**

53.    Admit that the movable magnets depicted at page 6 of Group Exhibit E are used to designate Motor Truck Drivers assignments.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request and the phrase "designate motor truck drivers assignments" is vague, ambiguous and subject to multiple interpretations. Subject to and without waiving the same objections, Defendant Helm admits that during part of the time he was employed as Deputy Commissioner of the Department of Aviation there was a whiteboard with moveable magnets on the premises of the Department of Aviation at O'Hare that were used**

13

as part of the process of assigning motor truck drivers and that the item depicted at page 6 of Group Exhibit E appears similar to that whiteboard.

54.     Admit that the movable magnets depicted at page 6 of Group Exhibit E may be moved by lifting them up and placing them at any other place on the board.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objections, Defendant Helm admits that during part of the time he was employed as Deputy Commissioner of the Department of Aviation there was a whiteboard with moveable magnets that could be moved on the premises of the Department of Aviation at O'Hare that were used as part of the process of assigning motor truck drivers.**

55.     Admit that there is a no truck bidding in place at the Department of Aviation.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request and the phrase "truck bidding" is vague, ambiguous and subject to multiple interpretations. Subject to and without waiving the same objection, Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

56.     Admit that foremen assign trucks to Motor Truck Drivers on a daily basis.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objection, Defendant Helm admits that during his tenure with the Department of Aviation Motor Truck Foreman made daily assignments to Motor Truck Drivers for certain tasks but not all assignments.**

57.     Admit that the foremen report directly you.

14

**RESPONSE: Defendant Helm denies the request.**

58. Admit that you supervise the foremen.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request and the phrase "supervise" is vague, ambiguous, and subject to multiple interpretations. Subject to and without waiving the same objection, Defendant Helm admits that during his tenure with the Department of Aviation he was in the organization chart above Motor Truck Driver Foreman but denies that he was their immediate supervisor.**

59. Admit that the foremen must follow orders that you gave them.

**RESPONSE: Defendant Helm admits that foreman working for the DOA during his tenure would have to follow the direction from direct supervisors and other managers to perform work in accordance with the collective bargaining agreement and the City's personnel rules. Defendant Helm denies the remainder of the request.**

60. Admit that you have authority to approve overtime for Motor Truck Drivers assigned to the grass-cutting team.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request and the phrase "authority to approve overtime" is vague, ambiguous, and subject to multiple interpretations. Subject to and without waiving the same objection, Defendant Helm denies that during his tenure he was the first, last or final say on overtime but admits that he was involved in the overtime approval process for the grass-cutting team as Deputy Commissioner of DOA.**

61. Admit that the grass-cutting team operated within the same areas at the Department of Aviation in the years 2015, 2016, 2017, and 2018.

15

**RESPONSE: Defendant Helm objects to this request as the entire request is vague, ambiguous, and subject to multiple interpretations. Subject to and without waiving the same objection, Defendant Helm denies the request.**

62.    Admit that the Overtime Call Out Sheets are updated by the foremen on a daily basis.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objections, Defendant Helm admits that during part of the time he was employed as Deputy Commissioner of the Department of Aviation Overtime Call Out sheets were supposed to be updated on a daily basis.**

63.    Admit that the Overtime Call Out Sheets must be manually updated by the foremen on a daily basis.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request. Subject to and without waiving the same objections, Defendant Helm admits that during part of the time he was employed as Deputy Commissioner of the Department of Aviation Overtime Call Out sheets were updated on a daily basis, but denies that they could only be updated manually.**

64.    Admit that if a foreman does not update an Overtime Call Sheet that the hours of overtime worked by a particular driver will not be accurately reflected on the Overtime Call Sheet.

**RESPONSE: Defendant Helm objects to this request as overly broad since it sets no time limit for the request, and that the request is vague, ambiguous, subject to multiple interpretations and calls for speculation. Subject to the same objections Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

16

65.     Admit that you received the document attached as Exhibit F from Charles Termini.

**RESPONSE: Defendant Helm admits he received the document attached as Exhibit F from an anonymous email account and that he suspected Charles Termini was responsible for the document's content. Defendant Helm denies the remaining assertions in this request.**

66.     Admit that you were aware that Charles Termini sent the document attached as Exhibit F via email.

**RESPONSE: Defendant Helm admits he received the document attached as Exhibit F from an anonymous email account and that he suspected Charles Termini was responsible for the document's content. Defendant Helm denies the remaining assertions in this request.**

67.     Admit that you were included on the email sent by Argentene Hrysikos on 11/5/2018 at 6:05 p.m. attached as Exhibit G.

**RESPONSE: Admit.**

68.     Admit that the email chain attached as Exhibit G is a true, accurate, and complete email chain.

**RESPONSE: Admit.**

69.     Admit that the emails attached as Exhibit G are genuine.

**RESPONSE: Admit.**

70.     Admit that on November 5, 2018 you sent an email at 4:23 p.m. contained in Exhibit G to Argentene Hrysikos that "It's an ongoing issue that should also be a concern to CDA as a whole seeing as the email was sent to the FAA, Airlines and a current City of Chicago Alderman. Please advise."

**RESPONSE: Admit.**

71.     Admit that on November 5, 2018 you knew that Charles Termini had sent an email to the FAA that you were referencing in your email to Argentene Hrysikos at Exhibit G.

17

**RESPONSE: Defendant Helm admits he received the document attached as Exhibit F from an anonymous email account, that an FAA employee was copied on the email, and that he suspected Charles Termini was responsible for the document's content. Defendant Helm denies the remaining assertions in this request.**

72.     Admit that you left the City's employment in August 2019.

**RESPONSE: Defendant Helm admits that he retired from City employment in August 2019.**

73.     Admit that you were forced to resign by the City of Chicago.

**RESPONSE: Deny.**

74.     Admit that you received Cubs Tickets from businesses in 2016 as depicted in Exhibit H.

**RESPONSE: Deny.**

75.     Admit that in 2016 you received the Cubs Tickets from businesses in 2016 as depicted in Exhibit H.

**RESPONSE: Defendant Helm objects to this request as unduly burdensome as it is duplicative of request 74. Subject to and without waiving the same objection, Defendant Helm denies this request.**

76.     Admit that in 2016 you sold the Cubs Tickets depicted in Exhibit H on the internet and split the proceeds with Nick Thome.

**RESPONSE: Deny.**

77.     Admit that in 2016 Nick Thome sold the Cubs Tickets depicted in Exhibit H on the internet and split the proceeds with Nick Thome.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

18

78.     Admit that you arranged meetings with the businesses who gave you Cubs Tickets in 2016 with DOA officials regarding contracts.

**RESPONSE: Defendant Helm denies that businesses gave him Cubs Tickets in 2016.**

**Defendant Helm denies the remaining facts in this request.**

79.     Admit that you sent the text message to Nick Thome and Kevin Martin on April 30, 2016 that is depicted in Exhibit I.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or**

**deny this request. Defendant Helm made reasonable inquiry and the information he knows**

**or can readily obtain is insufficient to enable him to admit or deny the request.**

80.     Admit that the text message depicted in Exhibit I is a true and accurate copy of the text message you sent to Kevin Martin and Nick Thome on April 30, 2016.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or**

**deny this request. Defendant Helm made reasonable inquiry and the information he knows**

**or can readily obtain is insufficient to enable him to admit or deny the request.**

81.     Admit that you wrote a text message to Kevin Martin and Nick Thome on April 30, 2016 that stated "75 people at my first organizational meeting. Thanks for sending Nick and Kevin. I made sure to make mention of you and the Alderman. We are dedicated and ready to roll in 41! Outstanding!" A copy of this text message is included in Exhibit I hereto.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or**

**deny this request. Defendant Helm made reasonable inquiry and the information he knows**

**or can readily obtain is insufficient to enable him to admit or deny the request.**

82.     Admit that Kevin Martin responded "Nice" in response to the text message you sent to him on April 30, 2016. A copy is included in Exhibit I.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or**

**deny this request. Defendant Helm made reasonable inquiry and the information he knows**

**or can readily obtain is insufficient to enable him to admit or deny the request.**

83.     Admit that Nick Thome responded "Great!!!" in response to the text message you sent to him on April 30, 2016. A copy is included in Exhibit I.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

84.    Admit that you asked Hector Hernandez via a text message attached hereto as Exhibit J to transfer John Lemond from the IDOT Kennedy Yard to the Landscape yard. A copy of Exhibit J is attached hereto.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

85.    Admit the genuineness of the text message attached hereto as Exhibit J.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

86.    Admit that you did not work for IDOT on December 16, 2015.

**RESPONSE**: Admit.

87.    Admit that on December 12, 2015, you sent Hector Hernandez a text message at 1:17 p.m. stating "I need the petitions tomorrow morning. Have to get them to Dem Party HQ by 11 am. Thanks Hector!" A copy is attached as Exhibit J.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

88.    Admit the genuineness of the text messages attached as Exhibit K.

**RESPONSE**: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.

89.     Admit that on March 13, 2016 you sent Hector Hernandez a text message at 12:42 p.m. stating "Joe called and doesn't think he needs them now. Unreal, let you guys know by the morning."

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

90.     Admit that in the text message referred to in Request 89, above, you were referencing Joe Berrios.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

91.     Admit that by "Joe called and doesn't think he needs them now," you were referring to people Joe asked you to gather for a political matter.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

92.     Admit the genuineness of the text message chain attached as Exhibit L.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

93.     Admit that you texted Hector Hernandez in the Exhibit L that "Anytime my friend. Don't worry about Jaunita, I'll take care of her officially at shift pick." A copy is attached as Exhibit L.

**RESPONSE: Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

21

94. Admit that by "Jaunita" you were referring to a Department of Aviation Motor Truck Driver.

**RESPONSE:** **Defendant Helm lacks knowledge or information sufficient to admit or deny this request. Defendant Helm made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny the request.**

Dated: 10/25/2019          Signed: _____
                                    William Helm

22

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

HECTOR HERNANDEZ and
CHARLES TERMINI, individually, and on behalf
of all others similarly-situated,

      Plaintiffs,

v.

WILLIAM HELM, in his individual capacity;
KEVIN MARTIN, in his individual capacity; and,
the CITY OF CHICAGO, as a municipal
corporation and as indemnitor,

      Defendants.

Case No. 18-cv-7647

The Honorable Judge John Z. Lee

Magistrate Judge Sidney Schenkier

**PLAINTIFFS' FIRST SET OF RULE 36 REQUESTS TO DEFENDANT HELM**

Plaintiffs, through undersigned counsel, make this First Set of Requests for Admission to

Defendant William Helm under Rule 36 of the Federal Rules of Civil Procedure.

**INSTRUCTIONS**

1. **If Defendant fails to respond or object to any request within 30 days of the service of these Requests, the matter shall be deemed admitted under Rule 36.**

2. Requests are continuing and supplemental answers are required if you obtain further information after your initial responses.

3. In the event you assert any form or objection or privilege as a ground for not answering a Request, set forth the legal grounds and facts upon which the objection or privilege is based.

4. For each request, identify the person answering the request by name and position with Defendant.

**SPECIFIC REQUESTS FOR ADMISSION**

1. Admit that the email attached as Exhibit A, Bates-labeled Alesia's MIDP Production 8-9, is a true, accurate, and complete copy of the email you sent on 7/24/2018 at 5:33 p.m.

2. Admit that you wrote the words "Dawna, I'll make the notification to these drivers. This should've been sent to me and I could push out as I decide. Unless this was a directive to send to Joe? Please advise." in the email attached as Exhibit A.

3. Admit that "these drivers" you were referring to in Exhibit A were Hector Hernandez, Charles Termini, and Tomasz Dorosz.

4. Admit that on or about July 26, 2018, you accompanied Plaintiff Hector Hernandez to the vehicle driving him to his OIG interview.

5. Admit that on or about July 27, 2018, you accompanied Plaintiff Charles Termini to the vehicle driving him to his OIG interview.

6. Admit that on July 30, 2018 you accompanied Tomasz Dorosz to the vehicle driving him to his OIG interview.

7. Admit that you sent the text message attached as Exhibit B on October 27, 2016.

8. Admit that the text message attached as Exhibit B is a true, accurate, and complete copy of the text message you sent on October 27, 2016.

9. Admit that in the text message attached as Exhibit B you wrote "Guys-we will be going out on our second canvass for Jack Franks for McHenry County Chairman this Saturday October 29th-10:30 am. We're going to be in Algonquin and will meet at: Panera Bread 2484 N. Randall Rd Elgin, Illinois 60123 Thanks as always gentlemen! Pat O'Connor-Bill Helm"

2

10. Admit that you sent the text message attached as Exhibit B to, among other people, City of Chicago employees.

11. Admit that you sent the text message attached as Exhibit B to, among other people, Tomasz Dorosz.

12. Admit that you sent the text message attached as Exhibit B to, among other people, Lisa Ellerman.

13. Admit that you sent the text message attached as Exhibit B to, among other people, Oscar Polanco.

14. Admit that you sent the text message attached as Exhibit B to, among other people, John Revere.

15. Admit that you sent the text message attached as Exhibit B to, among other people, Nick Thome.

16. Admit that you sent the text message attached as Exhibit B to, among other people, Edward Dickman.

17. Admit that you sent the text message attached as Exhibit B to, among other people, Douglas Miller.

18. Admit that you sent the text message attached as Exhibit B to, among other people, John Fasso.

19. Admit that you sent the text message attached as Exhibit B to, among other people, Russ Zizzo.

20. Admit that you sent the text message attached as Exhibit B to, among other people, Michael Bertoni.

3

21. Admit that you sent the text message attached as Exhibit B to, among other people, Joseph Mannerino.

22. Admit that you sent the text message attached as Exhibit B to, among other people, Gina Michalik.

23. Admit that you sent the text message attached as Exhibit B to, among other people, Brian Pagani.

24. Admit that between October 2016 and December 2018 you worked for Pat O'Connor.

25. Admit that when you sent the text message attached as Exhibit B you were working for Pat O'Connor.

26. Admit that you sent the text message attached as Exhibit C on September 24, 2016.

27. Admit that the text message attached as Exhibit C is a true, accurate, and complete copy of the text message you sent on September 24, 2016.

28. Admit that in the text message attached as Exhibit C you wrote, "To all-We've been asked to go door to door in the same precincts that we did several weeks ago for the Re-Election of State Senator Tom Cullerton.  Please contact and pick up material from this Monday & Tuesday from Nick Thome-8608 W.Brodman P-773-410-6831  We're asking to have the material returned by Thursday October 6th.  Thanks for your help on this very important election!! Bill Helm"

29. Admit that you sent the text message attached as Exhibit C to, among other people, City of Chicago employees.

30. Admit that you sent the text message attached as Exhibit C to, among other people, Tomasz Dorosz.

4

31. Admit that you sent the text message attached as Exhibit C to, among other people, Lisa Ellerman.

32. Admit that you sent the text message attached as Exhibit C to, among other people, Oscar Polanco.

33. Admit that you sent the text message attached as Exhibit C to, among other people, John Revere.

34. Admit that you sent the text message attached as Exhibit C to, among other people, Nick Thome.

35. Admit that you sent the text message attached as Exhibit C to, among other people, Edward Dickman.

36. Admit that you sent the text message attached as Exhibit C to, among other people, Douglas Miller.

37. Admit that you sent the text message attached as Exhibit C to, among other people, John Fasso.

38. Admit that you sent the text message attached as Exhibit C to, among other people, Russ Zizzo.

39. Admit that you sent the text message attached as Exhibit C to, among other people, Michael Bertoni.

40. Admit that you sent the text message attached as Exhibit C to, among other people, Joseph Mannerino.

41. Admit that you sent the text message attached as Exhibit C to, among other people, Gina Michalik.

5

42. Admit that you sent the text message attached as Exhibit C to, among other people, Brian Pagani.

43. Admit that the CATA Overtime Edit Form attached as Exhibit D is a true, accurate, and complete copy of the CATA Overtime Edit Form that has been used at the Department of Aviation.

44. Admit that your job title was Deputy Commissioner while the CATA Overtime Edit Form attached as Exhibit D was used at the Department of Aviation.

45. Admit that the phrase "Deputy Cmsr." used on the CATA Overtime Edit Form attached as Exhibit D refers to Deputy Commissioner.

46. Admit that the photographs attached as Group Exhibit E depict the entrance to the Dispatch Office and bulletin boards outside of the Dispatch Office.

47. Admit that the photographs attached as Group Exhibit E depict the bulletin board that the City authorizes Teamsters Local 700 to utilize.

48. Admit that you authorized Teamsters Local 700 representatives to post a letter from Local 700 now former President Becky Strzechowski that references the instant lawsuit.

49. Admit that you authorized Teamsters Local 700 representatives to maintain a letter from Local 700 now former President Becky Strzechowski that references the instant lawsuit from in or about December 2018 through the date you left the City's employment.

50. Admit that Teamsters Local 700 does not own the bulletin board depicted at page 1 of Group Exhibit E.

51. Admit that the City of Chicago owns the bulletin board depicted at page 1 of Group Exhibit E.

6

52. Admit that page 6 of Group Exhibit E depicts a whiteboard with movable magnets depicted as follows, which is excerpted from page 6 of Group Exhibit E:



53. Admit that the movable magnets depicted at page 6 of Group Exhibit E are used to designate Motor Truck Drivers assignments.

54. Admit that the movable magnets depicted at page 6 of Group Exhibit E may be moved by lifting them up and placing them at any other place on the board.

55. Admit that there is a no truck bidding in place at the Department of Aviation.

56. Admit that foremen assign trucks to Motor Truck Drivers on a daily basis.

57. Admit that the foremen report directly you.

58. Admit that you supervise the foremen.

59. Admit that the foremen must follow orders that you gave them.

60. Admit that you have authority to approve overtime for Motor Truck Drivers assigned to the grass-cutting team.

7

61. Admit that the grass-cutting team operated within the same areas at the Department of Aviation in the years 2015, 2016, 2017, and 2018.

62. Admit that the Overtime Call Out Sheets are updated by the foremen on a daily basis.

63. Admit that the Overtime Call Out Sheets must be manually updated by the foremen on a daily basis.

64. Admit that if a foreman does not update an Overtime Call Sheet that the hours of overtime worked by a particular driver will not be accurately reflected on the Overtime Call Sheet.

65. Admit that you received the document attached as Exhibit F from Charles Termini.

66. Admit that you were aware that Charles Termini sent the document attached as Exhibit F via email.

67. Admit that you were included on the email sent by Argentene Hrysikos on 11/5/2018 at 6:05 p.m. attached as Exhibit G.

68. Admit that the email chain attached as Exhibit G is a true, accurate, and complete email chain.

69. Admit that the emails attached as Exhibit G are genuine.

70. Admit that on November 5, 2018 you sent an email at 4:23 p.m. contained in Exhibit G to Argentene Hrysikos that "It's an ongoing issue that should also be a concern to CDA as a whole seeing as the email was sent to the FAA, Airlines and a current City of Chicago Alderman. Please advise."

71. Admit that on November 5, 2018 you knew that Charles Termini had sent an email to the FAA that you were referencing in your email to Argentene Hrysikos at Exhibit G.

72. Admit that you left the City's employment in August 2019.

8

73. Admit that you were forced to resign by the City of Chicago.

74. Admit that you received Cubs Tickets from businesses in 2016 as depicted in Exhibit H.

75. Admit that in 2016 you received the Cubs Tickets from businesses in 2016 as depicted in Exhibit H.

76. Admit that in 2016 you sold the Cubs Tickets depicted in Exhibit H on the internet and split the proceeds with Nick Thome.

77. Admit that in 2016 Nick Thome sold the Cubs Tickets depicted in Exhibit H on the internet and split the proceeds with Nick Thome.

78. Admit that you arranged meetings with the businesses who gave you Cubs Tickets in 2016 with DOA officials regarding contracts.

79. Admit that you sent the text message to Nick Thome and Kevin Martin on April 30, 2016 that is depicted in Exhibit I.

80. Admit that the text message depicted in Exhibit I is a true and accurate copy of the text message you sent to Kevin Martin and Nick Thome on April 30, 2016.

81. Admit that you wrote a text message to Kevin Martin and Nick Thome on April 30, 2016 that stated "75 people at my first organizational meeting. Thanks for sending Nick and Kevin. I made sure to make mention of you and the Alderman. We are dedicated and ready to roll in 41! Outstanding!" A copy of this text message is included in Exhibit I hereto.

82. Admit that Kevin Martin responded "Nice" in response to the text message you sent to him on April 30, 2016. A copy is included in Exhibit I.

83. Admit that Nick Thome responded "Great!!!" in response to the text message you sent to him on April 30, 2016. A copy is included in Exhibit I.

84. Admit that you asked Hector Hernandez via a text message attached hereto as Exhibit J to transfer John Lemond from the IDOT Kennedy Yard to the Landscape yard. A copy of Exhibit J is attached hereto.

85. Admit the genuineness of the text message attached hereto as Exhibit J.

86. Admit that you did not work for IDOT on December 16, 2015.

87. Admit that on December 12, 2015, you sent Hector Hernandez a text message at 1:17 p.m. stating "I need the petitions tomorrow morning. Have to get them to Dem Party HQ by 11 am. Thanks Hector!" A copy is attached as Exhibit J.

88. Admit the genuineness of the text messages attached as Exhibit K.

89. Admit that on March 13, 2016 you sent Hector Hernandez a text message at 12:42 p.m. stating "Joe called and doesn't think he needs them now. Unreal, let you guys know by the morning."

90. Admit that in the text message referred to in Request 89, above, you were referencing Joe Berrios.

91. Admit that by "Joe called and doesn't think he needs them now," you were referring to people Joe asked you to gather for a political matter.

92. Admit the genuineness of the text message chain attached as Exhibit L.

93. Admit that you texted Hector Hernandez in the Exhibit L that "Anytime my friend. Don't worry about Jaunita, I'll take care of her officially at shift pick." A copy is attached as Exhibit L.

94. Admit that by "Jaunita" you were referring to a Department of Aviation Motor Truck Driver.

***

10

Plaintiff reserves the right to make additional Requests for Admission consistent with

Rule 36.

Dated: September 21, 2019

Respectfully submitted,

**CHARLES TERMINI**
**HECTOR HERNANDEZ**

*/s Cass T. Casper*

_____

Cass T. Casper
One of Plaintiffs' Attorneys

*Cass T. Casper, Esq.*
TALON LAW, LLC
105 West Madison Street, Suite 1350
Chicago, Illinois 60602
P: (312) 351-2478
F: (312) 276-4930
E: ctc@talonlaw.com

Gianna Scatchell, Esq.
Law Offices of Gianna Scatchell
360 West Hubbard, 1404
Chicago, Illinois 60654
P: (312) 243-3303
E: gia@lawfirm.gs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 21, 2019, he caused to be served the accompanying Plaintiffs' First Set of Rule 36 Requests to Admit to Defendant William Helm on counsel for all Defendants via email to the below addresses.

Scott Crouch, Esq.          scott.crouch@cityofchicago.org
Jessica Durkin, Esq.        jessica.durkin@cityofchicago.org

/s Cass T. Casper

_____

Plaintiff's Attorney

11

EXHIBIT A

## Re: OIG Interviews

**William Helm**

Tue 7/24/2018 5:33 PM

To: Dawna Harrison <Dawna.Harrison@cityofchicago.org>
Cc: Joseph Alesia <Joseph.Alesia@cityofchicago.org>

Dawna, I'll make the notification to these drivers. This should've been sent to me and I could push out as I decide. Unless this was a directive to send to Joe? Please advise.

Thanks

Sent from my iPhone

On Jul 24, 2018, at 12:35 PM, Dawna Harrison <Dawna.Harrison@cityofchicago.org> wrote:

Howdy Joe
Please confirm that they are scheduled to work these days. Please do so confidentially. My suggestion is to notify them the morning of and have a driver take them. Thoughts?

Thanks!

**From:** Argentene Hrysikos
**Sent:** Tuesday, July 24, 2018 9:25 AM
**To:** Dawna Harrison <Dawna.Harrison@cityofchicago.org>
**Cc:** Robnyece Scott <Robye.Scott@cityofchicago.org>; Anita Morris <Anita.Morris2@cityofchicago.org>
**Subject:** Re: OIG Interviews

Dawna,
Can you please notify and confirm with below individuals regarding these meetings with IG.

Thank you
Argentene

On Jul 23, 2018, at 9:20 AM, Aurelio Garcia <Aurelio.Garcia@cityofchicago.org> wrote:

Please see below the request from OIG regarding interviews they would like to conduct.

Aurelio Garcia JD, LLM
Attorney
Chicago Department of Aviation
10510 W. Zemke Road
Chicago, Illinois 60666
T-(773) 462-7314
F-(773) 894-3939

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby

**Defendant Joseph Alesia's MIDP Production 000008**

Case: 1:18-cv-07647 Document #: 92 Filed: 10/25/19 Page 38 of 80 PageID #:930

notified that any dissemination, distribution, printing or copying of this e-mail, or any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

---

**From:** Jessica Drake [mailto:JDrake@igchicago.org]
**Sent:** Monday, July 23, 2018 9:18 AM
**To:** Aurelio Garcia
**Subject:** OIG Interviews

Good morning,

As per our phone call, I would like to schedule the below interviews. Please let me know if these dates/ times don't work or if the employee is not scheduled to work on these days. Thanks!

1. Hector Hernandez
   July 26, 2018
   10:00 a.m.
   69 W. Washington, Suite 1820

2. Charles Termini
   July 27, 2018
   10:00 a.m.
   69 W. Washington, Suite 1820

3. Tomasz Dorosz
   Jul7 30, 2018
   11:00 a.m.
   69 W. Washington, Suite 1820

CONFIDENTIAL

**Defendant Joseph Alesia's MIDP Production 000009**



EXHIBIT B          7:02 PM

← **+17734436978, +1773...** ▼          MORE

21 recipients

---

Thursday, October 27, 2016

Bill Helm



Guys-we will be going out on our second can-vass for Jack Franks for McHenry County Chairman this Saturday October 29th-10:30 am. We're going to be in Algonquin and will meet at:
Panera Bread
2484 N. Randall Rd
Elgin, Illinois 60123

Thanks as always gentleman!

Pat O'Connor-Bill Helm          MMS
6:59 PM

---

⬮ |Enter message          😊   SEND

 PLAINTIFF 000004

EXHIBIT C    5:34 PM

← **+17736737500, +1773...** ▼

25 recipients       **MORE**

Saturday, September 24, 2016

Bill Helm

To all-We've been asked to go door to door in the same precincts that we did several weeks ago for the Re-Election of State Senator Tom Cullerton. Please contact and pick up material from this Monday & Tuesday from Nick Thome-8608 W.Brodman P-773-410-6831

We're asking to have the material returned by Thursday October 6th. Thanks for your help on this very important election!!

Bill Helm

MMS
5:23 PM

Enter message       SEND

PLAINTIFF 000005

EXHIBIT D

# CATA Overtime Edit Form
Please print on yellow paper

CDA CHICAGO DEPARTMENT OF AVIATION

Employee Printed Name: _____

Job Title: _____

Employee ID #: _____

DATE: _____  START TIME: _____  END TIME: _____

## Overtime "Reason(RC)/Labor Tracking (LTC)" Code (Choose Only One):

| # | Category | | Code |
|---|----------|---|------|
| 1 | Emergency Overtime (Non-Weather Event) | | 185001 Call Out from Home |
| | | | 185002 Emergency Response/Outages |
| | | | 185003 Public Safety/Civilian Employees |
| | | | 185004 Public Safety/Security Employees |
| 2 | Non-Emergency Overtime (Non-Weather Event) | | 285001 Acting Up |
| | | | 285002 Administrative/Training |
| | | | 285003 Construction Activities/Escort |
| | | | 285004 Inventory Audit |
| | | | 285005 Preventative Maintenance |
| | | | 285006 Shift Shortage |
| 3 | Weather Related Overtime | | 385001 Extreme Heat |
| | | | 385002 Flooding |
| | | | 385003 Rain/Hail |
| | | | 385004 Snow/Ice |
| | | | 385005 Wind |
| 4 | Revenue Generating & Reimbursable Overtime | | 485001 Construction Activities |
| | | | 485002 Third Party Related |
| 5 | Special Event Overtime | | 585001 VIP Arrival/Departure |
| | | | 585002 Airport Events |
| 6 | Holiday Coverage Overtime | | 685001 Holiday Relief |
| 7 | Management Initiative | | 785001 Workforce Development |
| | | | 785002 Pilot Program |
| 8 | Mandated Admin Proceedings | | 885001 Legal Matters |

Employee to receive the following OT:

(According to Collective Bargaining Agreement) _____ Comp Time Hrs    _____ Pay Hrs
                                                         (CE, CX, CD, or CY)        (RX, RD, or DX)

Remarks: _____

Employee Signature: _____    Date: _____

Supervisor (Print Name): _____

Supervisor Signature: _____    Date: _____

Deputy Cmsr. (Print Name): _____    ☐ OT Approved  ☐ OT Denied

Deputy Cmsr. Signature: _____    Date: _____

NOTE: This form will NOT be processed by Payroll staff and will be returned if not completed correctly.

PLAINTIFF 000352





GROUP EXHIBIT E

PLAINTIFF 000857

# GROUP EXHIBIT E



UNION







PLAINTIFF  000358

# GROUP EXHIBIT E

**TEAMSTERS AT WORK**

Desiree Shurman on her ... is the union steward ... Northwest yard.

... Booter Regina ... teers her time before ... Black Tie Gala ... raise money for the ... Columbus. Regina's son ... ed from this charity.

**PROUD UNION HOME**

Stop by the union office or attend the next General Membership Meeting to pick up a Proud Union Home sign!

**24/7 CRITICAL INCIDENT LINE**
**1-866-975-2085**

In cases of true emergency, members can call the critical incident line after hours or on days when the union office is closed and be connected with a business agent or attorney.

Newly-added member benefits include discounts to Great America's Fright Fest and Orlando Vacations! Log on to the website to get them!
TeamstersLocal700.com/benefits

**Orlando** Employee Discounts

**SixFlags FRIGHT FEST**
THRILLS BY DAY FRIGHT BY NIGHT

**T-SHIRTS FOR SALE**

All proceeds go directly to the Teamsters Local 700 Benevolent Fund. The back of each t-shirt is shown below. Call 847-939-9707 to inquire or e-mail mindyg@teamsterslocal700.com.



**$15 each**
REMAINING SIZES:
2x 3x 4x 5x



**$10 each**
REMAINING SIZES:
1x 2x 3x



**COMING EVENTS**
... Day ... 8 ... closed.

General Membership Meeting ... day, Oct. 9 ... iggins Rd., First Floor ... IL 60068

Steward Training ... ct. 16 ... will receive more information in the ... d-September.

DATE! TNBC Chicago Chapter's ... Black Tie Affair ... v. 1, 2018 ... DEL MAR ... 8th Street, Hickory Hills, IL 60457 ... will be available soon. For updates, ... Chicago TNBC.com.

**Sign up to receive text messages from Teamsters Local 700**

... ds news updates via text message and we ... u to sign up if you haven't yet. A sign-up ... able to download on the homepage of the ... ebsite.

**Follow us on facebook**
x.com/TeamstersLocal700

**TEAMSTERS LOCAL 700**
1300 W. Higgins Road, Suite 301
Park Ridge, IL 60068
Phone (847) 939-9700 Fax (847) 518-6495
www.TeamstersLocal700.com
Union Office hours: Monday - Friday, 8 a.m. - 4:30 p.m.

CITY OF CHICAGO MEMBER NEWSLETTER
September 2018

---

**Location ID: 9093**

*HAZMAT FINGERPRINT LOCATION*

📍 IdentoGO

2400 E Devon Ave
Ste 205
Des Plaines, IL 60018-4617

⚠ Sign Up for Alerts

🕐 Monday - Friday: 08:30 AM - 05:00 PM
Saturday: 08:30 AM - 03:00 PM

---

Phone: (847) 939-9700 • Fax (847) 518-6495 • www.TeamstersLocal700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068

**BECKY STRZECHOWSKI, PRESIDENT • MICHAEL G. MELONE, SECRETARY-TREASURER**

### A Statement by President Becky Strzechowski to Teamsters Local 700 Members at the Department of Aviation

It has been brought to my attention that two members have recently filed a lawsuit against the City of Chicago and individuals employed by it.

Although Teamsters Local 700 is not a party or involved in this lawsuit, I wish to address the allegations made concerning Local 700 to correct inaccurate information stated in the lawsuit as well as to keep you fully advised.

In the Complaint, Plaintiffs allege that they "have been deprived of substantial overtime and preferred assignments and equipment because they have refused to engage in forced political work on and off City time at the behest of Defendants…"

Please note that no allegations of political retaliation or deprivation of preferred assignments or equipment were brought to the attention of the Union by Plaintiff Hector Hernandez, Plaintiff Charles Termini or any other member working at the Department of Aviation. The Union therefore did not file any grievances over these allegations. Nor did any member file a grievance or have a Union Steward do it for them. The first the Union became aware of these allegations was in the reading of the lawsuit and subsequent television appearances.

There were grievances filed by Local 700 Business Agent Carlos Sanchez at the request of grievant, Hector Hernandez. The grievance was filed concerning only the matter the grievant brought to the Union's attention - the potential distribution of overtime in violation of the collective bargaining agreement. It is simply not true, as the lawsuit states, that this grievance included "political reasons", as the grievant never brought this allegation to the Union's attention.

The initial grievance concerning the potential distribution of overtime in violation of the collective bargaining agreement was filed on 8/21/17. This covered the time period of 2017. Upon the request of Hector Hernandez to try to reach back to 2015 and 2016, Carlos Sanchez filed another grievance on 9/24/2017 concerning the potential distribution of overtime in violation of our collective bargaining agreement for those years.

These grievances were processed through the steps of the grievance procedure outlined in our contract and the Union did file them for arbitration, going so far as to schedule an arbitration date. As is not uncommon, more information was obtained and analyzed while preparing for the arbitration.

With over 31 years of experience and as an attorney, it became apparent to me that these grievances were not winnable in arbitration. First, the grievances were majorly flawed by time limits. Under our contract, grievances are required to be filed within 12 working days of knowledge of the grievance. These grievances were filed years later with the grievant attempting to reach back and claim years of improper distribution of overtime. In addition, over these years, no member filed a grievance, had a Union Steward file one, or brought the matter to the Union's attention so it could file one. Further, I had concerns that the grievant held positions with the Union during the entire period covered by these grievances. Besides serving as a member of the Executive Board, Hector Hernandez held the position of Assistant Business Agent (while onsite, working full time for the Department of Aviation) and Business Agent. In these positions, Hector Hernandez himself would be expected to ensure enforcement of our contract, yet he did not file a grievance on the matter or bring it to the attention of myself or others at the Union so that we could do so. It

---

was only after he no longer held the position of Assistant Business Agent and Business Agent, that he asked the current Business Agent to file grievances on the matter. My assessment was that the Union could not survive the employer's defense that the grievances were not timely filed. I, also, had concerns over inconsistencies and witness testimony. With what I considered to be fatal flaws in these grievances, I made the decision not to expend member resources by proceeding to arbitration on grievances that I concluded we could not win.

I'd also like to point out that the lawsuit claims that a Deputy Commissioner and Airport Managers are "responsible for determining the terms, conditions and benefits of employment of Plaintiffs." I disagree with these statements, as Local 700 is here to negotiate the Plaintiffs and your terms, conditions and benefits of employment. These items are reduced to writing in your collective bargaining agreement and can be enforced to the extent permitted by this contract. You are the eyes and ears on site that can identify violations of our contract. We need you to bring any suspected violations to our attention as soon as they occur so that we can enforce our contract within the time limits required and ensure you receive the terms, conditions and benefits that we have fought to gain for you.

While I did not address every issue Local 700 has with the lawsuit, I hope this provides clarification and corrects inaccuracies on the matter. On behalf of all of us at Local 700, we look forward to continuing to serve you in the future.

Fraternally,

*Becky Strzechowski*

Becky Strzechowski
President

*Nothing contained in this letter should be construed as Local 700's waiver of any legal argument, position or supplemental grievance. The Union does not forfeit its right to make any additional arguments.*

---

**Foreman of Motor Truck Drivers Grievance**

From: Ramon Williams
Sent: Fri, Sep 15, 2017 at 1:36 pm
To: Garrity, Michael
Cc: Donald O'Neill CoC L/R, Sorfleet, Steve, Chol, Soo, Owen, Christopher, Hrysikos, Argente...



**TEAMSTERS LOCAL UNION NO. 700**
Affiliated with International Brotherhood of Teamsters
1300 West Higgins Road, Suite 301 — Park Ridge, Illinois 60068
Telephone: (847) 939.9700 — Fax: (847) 518.6495

### GRIEVANCE FORM

| Step : | | |
|---|---|---|
| Grievant's Name (Last, First, MI & Department) | | |
| Class Action Grievance | Contract Section Violated | Date Filed |
| Incident Date | Article 2 and All Other Affected Sections of The CBA | March 16, 2018 |
| March 16, 2018 | | |

Basis of Grievance: (Attach additional documentation, if any. Explain violation of the contract and the remedy sought.)

All Motor Truck Drivers, Career Service and Pool at the Department of Aviation O'hare have ... included in the job pick for the Grass Cutting Job Detail, Landside.

Remedy:
Cease and Desist all Job assignments until any and all affected members are included in the ... pick.
Make members whole in any and all ways possible.

---

**CITY OF CHICAGO**
Employee Problems Form
(Labor/Trade Unions)

Grievance No. ___
Date Filed ___

| Employee Name All Affected | Social Security No. | Title Code 7184 | Title 7184 - Pool Motor Truck Driver |
|---|---|---|---|
| Department Department of Aviation | | Work Location O'Hare International Airport | Work Phone |

Have you discussed this grievance with your immediate supervisor? Yes ___ No X

Date of discussion ___  Immediate Supervisor ___

Statement of Grievance: On or about 30th of March the department of Aviation violated the 2017-2022 Collective Bargaining Agreement when they knowingly failed to honor Voluntary Assignment Waivers properly submitted by the following MTD's: GERARDO LOPEZ and affected MTD's. The employer has also failed to compensate grievant accordingly in lieu of the City of Chicago and Teamsters local 700

Contract Section (s) Violated: 8.6D

Remedy Requested: The grievants should be granted their waivers and should be made whole in all ways applicable

Carlos Santos

Employee Signature ___ Date ___  Union Representative Signature ___

SUBMIT TO IMMEDIATE SUPERVISOR (within 12 calendar days of event)
Extension of time limits? Yes ___ No ___  Date Received ___
If yes, attach appropriate documentation.  Initials ___

---

**CITY OF CHICAGO**
Employee Problems Form
(Labor/Trade Unions)

Grievance No. 08-18-085-0031
Date Filed 12/13/2018

| Employee Name All Affected | Social Security No. | Title Code 7184 | Title 7184 - Pool Motor Truck Driver |
|---|---|---|---|
| Department Department of Aviation | | Work Location O'Hare International Airport | Work Phone |

Have you discussed this grievance with your immediate supervisor? Yes X No ___

Date of discussion 12/07/2018  Immediate Supervisor ___

Statement of Grievance: affected pool motor drivers (7184) did not receive paychecks on scheduled December 7th payday, aviation human resources said affected prints were not entered in system correctly and paychecks would be issued within one to two business days. as of the time of this grievance being filed, 4 business days, no paychecks have been issued.

Contract Section (s) Violated: sections 4.10a 4.11b 4.15c and all other applicable sections within the cba

Remedy Requested: to be paid in full and be made whole in every way.

Mark Chasen 12/13/2018

Employee Signature ___ Date ___  Union Representative Signature ___

SUBMIT TO IMMEDIATE SUPERVISOR (within 12 calendar days of event)
Extension of time limits? Yes ___ No ___  Date Received ___
If yes, attach appropriate documentation.  Initials ___

SUBMIT TO IMMEDIATE SUPERVISOR (within 5 working days of knowledge of event)
Send Directly to Step II

---

**CITY OF CHICAGO**
Employee Problems Form
(Labor/Trade Unions)

Grievance No. ___
Date Filed ___

| Employee Name All Affected | Social Security No. | Title Code 7183 | Title 7183 - Motor Truck Driver |
|---|---|---|---|
| Department Department of Aviation | | Work Location O'Hare International Airport | Work Phone |

Have you discussed this grievance with your immediate supervisor? Yes X No ___

Date of discussion 04/26/2018  Immediate Supervisor Kevin Martin

Statement of Grievance: As per the S.O.P. of the Co-Bus # 7 : there is to have a spotter at all times.From the dates listed 4/30 5/4, 5/08, 5/18, I was removed from the Bus by the formen in charge at 3:00 p.m. and the bus was in operation til 4:00 p.m. thus denying me of that extra hour of overtime.

Contract Section (s) Violated: 5.3a and all applicable sections of our cba

Remedy Requested: need to be made whole for all overtime hours lost on dates mentioned above.

Carlos Santos

Employee Signature ___ Date ___  Union Representative Signature ___

SUBMIT TO IMMEDIATE SUPERVISOR (within 12 calendar days of event)
Extension of time limits? Yes ___ No ___  Date Received ___
If yes, attach appropriate documentation.

---

**Location ID: 9093**

*HAZMAT FINGERPRINT LOCATION*

IdentoGO

2400 E Devon Ave
Ste 205
Des Plaines, IL 60018-4617

⚠ Sign Up for Alerts

🕐 Monday - Friday: 08:30 AM - 05:00 PM
Saturday: 08:30 AM - 03:00 PM

PLAINTIFF - 000859

GROUP EXHIBIT E

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

Phone: (847) 939-9700 • Fax: (847) 518-6495 • www.TeamstersLocal700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068

BECKY STRZECHOWSKI, PRESIDENT • MICHAEL G. MELONE, SECRETARY-TREASURER

## A Statement by President Becky Strzechowski to
## Teamsters Local 700 Members at the Department of Aviation

It has been brought to my attention that two members have recently filed a lawsuit against the City of Chicago and individuals employed by it.

Although Teamsters Local 700 is not a party or involved in this lawsuit, I wish to address the allegations made concerning Local 700 to correct inaccurate information stated in the lawsuit as well as to keep you fully advised.

In the Complaint, Plaintiffs allege that they "have been deprived of substantial overtime and preferred assignments and equipment because they have refused to engage in forced political work on and off City time at the behest of Defendants..."

Please note that no allegations of political retaliation or deprivation of preferred assignments or equipment were brought to the attention of the Union by Plaintiff Hector Hernandez, Plaintiff Charles Termini or any other member working at the Department of Aviation. The Union therefore did not file any grievances over these allegations. Nor did any member file a grievance or have a Union Steward do it for them. The first the Union became aware of these allegations was in the reading of the lawsuit and subsequent television appearances.

There were grievances filed by Local 700 Business Agent Carlos Sanchez at the request of grievant, Hector Hernandez. The grievance was filed concerning only the matter the grievant brought to the Union's attention - the potential distribution of overtime in violation of the collective bargaining agreement. It is simply not true, as the lawsuit states, that this grievance included "political reasons", as the grievant never brought this allegation to the Union's attention.

The initial grievance concerning the potential distribution of overtime in violation of the collective bargaining agreement was filed on 8/21/17. This covered the time period of 2017. Upon the request of Hector Hernandez to try to reach back to 2015 and 2016, Carlos Sanchez filed another grievance on 9/24/2017 concerning the potential distribution of overtime in violation of our collective bargaining agreement for those years.

These grievances were processed through the steps of the grievance procedure outlined in our contract and the Union did file them for arbitration, going so far as to schedule an arbitration date. As is not uncommon, more information was obtained and analyzed while preparing for the arbitration.

With over 31 years of experience and as an attorney, it became apparent to me that these grievances were not winnable in arbitration. First, the grievances were majorly flawed by time limits. Under our contract, grievances are required to be filed within 12 working days of knowledge of the grievance. These grievances were filed years later with the grievant attempting to reach back and claim years of improper distribution of overtime. In addition, over these years, no member filed a grievance, had a Union Steward file one, or brought the matter to the Union's attention so it could file one. Further, I had concerns that the grievant held positions with the Union during the entire period covered by these grievances. Besides serving as a member of the Executive Board, Hector Hernandez held the position of Assistant Business Agent (while onsite, working full time for the Department of Aviation) and Business Agent. In these positions, Hector Hernandez himself would be expected to ensure enforcement of our contract, yet he did not file a grievance on the matter or bring it to the attention of myself or others at the Union so that we could do so. It

was only after he no longer held the position of Assistant Business Agent and Business Agent, that he asked the current Business Agent to file grievances on the matter. My assessment was that the Union could not survive the employer's defense that the grievances were not timely filed. I, also, had concerns over inconsistencies and witness testimony. With what I considered to be fatal flaws in these grievances, I made the decision not to expend member resources by proceeding to arbitration on grievances that I concluded we could not win.

I'd also like to point out that the lawsuit claims that a Deputy Commissioner and Airport Managers are "responsible for determining the terms, conditions and benefits of employment of Plaintiffs." I disagree with these statements, as Local 700 is here to negotiate the Plaintiffs and your terms, conditions and benefits of employment. These items are reduced to writing in your collective bargaining agreement and can be enforced to the extent permitted by this contract. You are the eyes and ears on site that can identify violations of our contract. We need you to bring any suspected violations to our attention as soon as they occur so that we can enforce our contract within the time limits required and ensure you receive the terms, conditions and benefits that we have fought to gain for you.

While I did not address every issue Local 700 has with the lawsuit, I hope this provides clarification and corrects inaccuracies on the matter. On behalf of all of us at Local 700, we look forward to continuing to serve you in the future.

Fraternally,

*Becky Strzechowski*

Becky Strzechowski
President

*Nothing contained in this letter should be construed as Local 700's waiver of any legal argument, position or supplemental grievance. The Union does not forfeit its right to make any additional arguments.*



$15 each
REMAINING SIZES:
2x
3x
4x
5x

$10 each
REMAINING SIZES:
1x
2x
3x

MSTERS LOCAL 700
W. Higgins Road, Suite 301
Park Ridge, IL 60068
-9700 Fax (847) 518-6495
w.TeamstersLocal700.com
- Friday, 8 a.m. - 4:30 p.m.

CHICAGO MEMBER NEWSLETTER
September 2018

CITY OF CHICAGO
Employee Problems Form

(Labor/Trade Unions)

Grievance No.
Date Filed: 12/13/2018



PLAINTIFF 000860



GROUP EXHIBIT E



PLAINTIFF 000362





GROUP EXHIBIT E

# GROUP EXHIBIT E



PLAINTIFF_000365



GROUP EXHIBIT E



⊙ Monday – Friday...
Saturday...



 

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS
Phone: (847) 939-9700 • Fax: (847) 518-6495 • www.TeamstersLocal700.com
1300 W. Higgins Road • Suite 301 • Park Ridge, Illinois 60068
**BECKY STRZECHOWSKI**, PRESIDENT • **MICHAEL G. MELONE**, SECRETARY-TREASURER

**A Statement by President Becky Strzechowski to**
**Teamsters Local 700 Members at the Department of Aviation**

It has been brought to my attention that two members have recently filed a lawsuit against the City of Chicago and individuals employed by it.

Although Teamsters Local 700 is not a party or involved in this lawsuit, I wish to address the allegations made concerning Local 700 to correct inaccurate information stated in the lawsuit as well as to keep you fully advised.

In the Complaint, Plaintiffs allege that they "have been deprived of substantial overtime and preferred assignments and equipment because they have refused to engage in forced political work on and off City time at the behest of Defendants…"

Please note that no allegations of political retaliation or deprivation of preferred assignments or equipment were brought to the attention of the Union by Plaintiff Hector Hernandez, Plaintiff Charles Termini or any other member working at the Department of Aviation. The Union therefore did not file any grievances over these allegations. Nor did any member file a grievance or have a Union Steward do it for them. The first the Union became aware of these allegations was in the reading of the lawsuit and subsequent television appearances.

There were grievances filed by Local 700 Business Agent Carlos Sanchez at the request of grievant, Hector Hernandez. The grievance was filed concerning only the matter the grievant brought to the Union's attention - the potential distribution of overtime in violation of the collective bargaining agreement. It is simply not true, as the lawsuit states, that this grievance included "political reasons", as the grievant never brought this allegation to the Union's attention.

The initial grievance concerning the potential distribution of overtime in violation of the collective bargaining agreement was filed on 8/21/17. This covered the time period of 2017. Upon the request of Hector Hernandez to try to reach back to 2015 and 2016, Carlos Sanchez filed another grievance on 9/24/2017 concerning the potential distribution of overtime in violation of our collective bargaining agreement for those years.

These grievances were processed through the steps of the grievance procedure outlined in our contract and the Union did file them for arbitration, going so far as to schedule an arbitration date. As is not uncommon, more information was obtained and analyzed while preparing for the arbitration.

With over 31 years of experience and as an attorney, it became apparent to me that these grievances were not winnable in arbitration. First, the grievances were majorly flawed by time limits. Under our contract, grievances are required to be filed within 12 working days of knowledge of the grievance. These grievances were filed years later with the grievant attempting to reach back and claim years of improper distribution of overtime. In addition, over these years, no member filed a grievance, had a Union Steward file one, or brought the matter to the Union's attention so it could file one. Further, I had concerns that the grievant held positions with the Union during the entire period covered by these grievances. Besides serving as a member of the Executive Board, Hector Hernandez held the position of Assistant Business Agent (while onsite, working full time for the Department of Aviation) and Business Agent. In these positions, Hector Hernandez himself would be expected to ensure enforcement of our contract, yet he did not file a grievance on the matter or bring it to the attention of myself or others at the Union so that we could do so. It

was only after he no longer held the position of Assistant Business Agent and Business Agent, that he asked the current Business Agent to file grievances on the matter. My assessment was that the Union could not survive the employer's defense that the grievances were not timely filed. I, also, had concerns over inconsistencies and witness testimony. With what I considered to be fatal flaws in these grievances, I made the decision not to expend member resources by proceeding to arbitration on grievances that I concluded we could not win.

I'd also like to point out that the lawsuit claims that a Deputy Commissioner and Airport Managers are "responsible for determining the terms, conditions and benefits of employment of Plaintiffs." I disagree with these statements, as Local 700 is here to negotiate the Plaintiffs and your terms, conditions and benefits of employment. These items are reduced to writing in your collective bargaining agreement and can be enforced to the extent permitted by this contract. You are the eyes and ears on site that can identify violations of our contract. We need you to bring any suspected violations to our attention as soon as they occur so that we can enforce our contract within the time limits required and ensure you receive the terms, conditions and benefits that we have fought to gain for you.

While I did not address every issue Local 700 has with the lawsuit, I hope this provides clarification and corrects inaccuracies on the matter. On behalf of all of us at Local 700, we look forward to continuing to serve you in the future.

Fraternally,

*Becky Strzechowski*

Becky Strzechowski
President

*Nothing contained in this letter should be construed as Local 700's waiver of any legal argument, position or supplemental grievance. The Union does not forfeit its right to make any additional arguments.*



JUNE 29
Harley-Davidson
Countryside, 60525
a.m. Registration
m. Kickstands Up
$5 per passenger

son Phelps VFW
k Lawn, IL 60453

Local 700 Benevolent Fund
merican Renegades LE/MC

RANS
CYCLE RIDE
our fallen heroes

JUNE 29
arley-Davidson
ntryside, 60525
m. Registration
Kickstands Up
per passenger

Phelps VFW
awn, IL 60453

700 Benevolent Fund
an Renegades LE/MC

m Garage Attendants,
Alloy Fabricators Local Union No. 731



FOR IMMEDIAT...
Friday, March 22,...

**Teamsters**...

Park Ridge, Ill. – On...
Teamster Local Union...
million lease purchase...
part by an appellate c...

The case involved Th...
agreement with a real...
726 was placed into a...
result of financial irre...

The Trustee assigned...
because it appeared th...
requirements of the Il...
layout how the Local...
membership. The Trus...
purchase agreement.

Local 726 ultimately...
sector local, Teamster...
also been placed into...
estate developer filed...
amended the complai...
Board because the Int...

The case was tried in...
on several bases, and...
reversed by the Appel...
I against Local 700 fo...
remaining basis for lia...
estate developer, who...
Specifically, the mem...
agreement.

The Supreme Court co...
on the parties' failure...
mbers of an unincorp...

PLAINTIFF 000368

EXHIBIT F

# VOTE OF NO CONFIDENCE

## FOR

## VEHICLE SERVICES MANAGEMENT TEAM EMPLOYED BY THE CITY OF CHICAGO, DEPT. OF AVIATION (CDA) AT O'HARE INT'L AIRPORT

To whom it may concern,

We, the undersigned Motor Truck Drivers who are employed at The Dept. of Aviation at O'Hare Int'l. Airport have composed this letter to express our dissatisfaction with the current **Deputy Commissioner William Helm**. **Vehicle Services Airport Manager Joseph Alesia**. And **Vehicle Services Airport Manager Kevin Martin**.

This letter is an expression of our "Vote of No Confidence" in Mr. Helm, Mr. Alesia, and Mr. Martin and their ability to run our division (VEHICLE SERVICES). We understand the severity of this decision and did not arrive at it hastily.

O'Hare has always been a place to be proud of, where decisions were made on a collaborative basis with the best interest and safety for All in mind.  O'Hare MTD's have always experienced great vision from our leaders. MTD's were given the respect and support to achieve our goals.

Throughout the past few years we have had concerns regarding the Management team's leadership specifically regarding trust, collaboration, decision-making, vision, and lack of respect for staff and communication.
We also believe that the Management Team has failed to abide by their mission statement that "Everyone is entitled to a safe, and respectful environment".

The Managers have not created a safer work environment, but instead have created a toxic environment for All Vehicle Services staff. Without the recognition of mistakes or the willingness to listen to Senior MTD's with decades of Experience, there is no hope for learning or improvement and thus no way forward.

PLAINTIFF  000347

EXHIBIT F

Emphasis on work uniform spending, while paying <u>No Attention to Procurement</u> of:

<u>Vehicle Transponders</u> so the FAA ATCT can track and recognize ALL CDA vehicles on the Airfield.
<u>Amber Safety Flashing Lights</u> for Leased Escort Vehicles (which are also used for Winter Snow Operations as Lead Trucks)
<u>Communications Training</u> for Latest FAA Radios installed in Leased vehicles, Most staff are unaware how to properly utilize the radios or change from Tower to Ground frequencies.

Instead we are barraged with memo's regarding the most simplistic and ridiculous rules that are clearly in the H.R. Employee's Handbook.

There are Several investigations of impropriety taking place against these individuals at this moment, but we need action to be taken now, before the Winter Season sets in. <u>Our expertise in Snow Removal Operations ARE AT RISK!</u>

We feel their lack of attention to, preparation for, or appropriate prioritizing of, the Safety requirements and interests of our MTD Staff, As well as a failure to recognize and respect the expertise of the all who work in the AMC Building.

We feel they have a inconsistency in application of rules and an ongoing lack of respect toward All Staff.  An airport section cannot be run successfully with a one-way avenue of communication.  Even when input is sought, there is a failure to follow through or a total disregard for the ideas of many; when communication occurs, it is too often delayed and incomplete. There's just an overall feeling of Dismay and we are losing ground all the time. We need a different, more solid, and experienced leadership. The **Employee Moral** is just too low and we feel it is time for a change.

For these reasons stated, we the undersigned are voting **"No Confidence"** in:

**Mr. Helm**, **Mr. Alesia**, and **Mr. Martin**. We hope and believe that you as a leaders and role models will make the right decision and choose what is in the best interest for CDA VEHICLE SERVICES AND O'HARE INT'L AIRPORT.

PLAINTIFF 000348

Case: 1:18-cv-07647 Document #: 92 Filed: 10/25/19 Page 57 of 80 PageID #:949

EXHIBIT G

## RE: MTD Charles Termini- No Confidence Letter 10/4/2018 1 of 2

**Argentene Hrysikos**

Mon 11/5/2018 6:05 PM

**To:** William Helm <William.Helm@cityofchicago.org>
**Cc:** Kevin Martin <Kevin.Martin2@cityofchicago.org>; Joseph Alesia <Joseph.Alesia@cityofchicago.org>; Richard Butler <Richard.Butler@cityofchicago.org>; Anita Morris <Anita.Morris2@cityofchicago.org>; Kieran Sheridan <Kieran.Sheridan@cityofchicago.org>

Thank you.

## Argentene G. Hrysikos

Director of Administration



10510 W. Zemke Road
Chicago, IL 60666
Telephone: (773)686-3522
Email: argentene.hrysikos@cityofchicago.org

*Connecting the world to Chicago and Chicago to the world.*
*Please contact us with compliments or concerns at aviation@flychicago.com.*
*Connect with us on Twitter: @fly2ohare and @fly2midway*
*To find out more about Chicago's airports, how to do business with the department and ongoing community initiatives,*
*visit www.flychicago.com.*

---

**From:** William Helm
**Sent:** Monday, November 05, 2018 6:02 PM
**To:** Argentene Hrysikos
**Cc:** Kevin Martin; Joseph Alesia; Richard Butler; Anita Morris; Kieran Sheridan
**Subject:** Re: MTD Charles Termini- No Confidence Letter 10/4/2018 1 of 2

That would be perfect.

Thanks

Sent from my iPhone

On Nov 5, 2018, at 5:09 PM, Argentene Hrysikos <Argentene.Hrysikos@cityofchicago.org> wrote:

> Bill,
>
> Can you do 10:15 am on Thursday with your team.
>
> Thank you.
>
> ## Argentene G. Hrysikos
>
> Director of Administration
> <image001.png>
> 10510 W. Zemke Road
> Chicago, IL 60666

**Defendant Joseph Alesia's MIDP Production 000016**

EXHIBIT G

Telephone: (773)686-3522
Email: argentene.hrysikos@cityofchicago.org

*Connecting the world to Chicago and Chicago to the world.*
*Please contact us with compliments or concerns at aviation@flychicago.com.*
*Connect with us on Twitter: @fly2ohare and @fly2midway*
*To find out more about Chicago's airports, how to do business with the department and ongoing community initiatives, visit www.flychicago.com.*

---

**From:** William Helm
**Sent:** Monday, November 05, 2018 4:23 PM
**To:** Argentene Hrysikos
**Cc:** Kevin Martin; Joseph Alesia; Richard Butler; Anita Morris; Kieran Sheridan
**Subject:** Re: MTD Charles Termini- No Confidence Letter 10/4/2018 1 of 2

Argentene, I'm available this Wednesday afternoon after 1:00. Thursday I'm available anytime in the morning until 11:00. To be clear, this is not only a concern of mine but also the concern of the entire Vehicle Services management team and workforce. It's a ongoing issue that should also be a concern to CDA as a whole seeing as the email was sent to the FAA, Airlines and a current City of Chicago Alderman. Please advise.

Thanks

Sent from my iPhone

On Nov 5, 2018, at 4:11 PM, Argentene Hrysikos <Argentene.Hrysikos@cityofchicago.org> wrote:

> Hi Bill,
> Anita and I would like to meet with you to discuss your concerns regarding this matter. Please let me know what days are best for you.
>
> Thank you.
>
> Argentene G. Hrysikos
> Director of Administration
> Human Resources
> <Outlook-troi5fhn.png>
> 10510 W. Zemke Road
> Chicago, IL 60666
> Telephone: (773)686-3522
> argentene.hrysikos@cityofchicago.org
>
>
> *Connecting the world to Chicago and Chicago to the world.*
> *Please contact us with compliments or concerns at aviation@flychicago.com.*
> *Connect with us on Twitter: @fly2ohareand @fly2midway*
> *To find out more about Chicago's airports, how to do business with the department and ongoing community initiatives, visit www.flychicago.com.*
>
>
> On Oct 30, 2018, at 2:59 PM, William Helm <William.Helm@cityofchicago.org> wrote:

**Defendant Joseph Alesia's MIDP Production 000017**

Case: 1:18-cv-07647 Document #: 92 Filed: 10/25/19 Page 59 of 80 PageID #:951

EXHIBIT G

Kevin, Argentene, any follow up on this ongoing issue at Vehicle Services? Please advise.

Thanks

Sent from my iPhone

On Oct 26, 2018, at 3:47 PM, Kevin Martin <Kevin.Martin2@cityofchicago.org> wrote:

> Argentene
>
> This not only in response to the No Confidence email that was sent out on 10/4/2018 but informing and readdressing of some of the ongoing issues that Management has been dealing with for an extended period of time. In short, disgruntled MTD Charles Termini with others have been wreaking havoc on Vehicle Services for quite some time up to including this last stunt defaming management with this fictitious email. We have put together statements from the Management team along with other evidence of Mr. Termini's continued antics. The Video files are attached, the video which pertains to the No Confidence incident is as follows: **BLDG - 502 - AMC - TIME CLOCK 5:30:00 11:30:00 with the time on the recording being from 06:19:00 to 06:28:00**. This is where Mr. Termini Begins his day on the 10/4/2018 by distributing a paper copy of the email that was sent out later that morning via email. The Videos are long loops that were secured by OCC- Ken Warrick. They will be delivered directly to your office, they are on a memory stick. We are also suggesting all footage from the AMC Building on 10/4/2018 be secured before it expires in the case there is other evidence that will be pertinent in this investigation. Management at Vehicle Services are in consensus that something needs to be done with Mr. Termini ASAP. He should no longer be working in and around an Airport. We are available for any follow up questions you may have. Please Advise

**Kevin Martin**

Airport Manager - Vehicle Services

<Outlook-rw5u4ldb.png>
10510 W. Zemke Road
Chicago, IL 60666
Telephone: (773) 686-3423
Mobile: (773) 719-5583
Email: Kevin.Martin2@cityofchicago.org

**Defendant Joseph Alesia's MIDP Production 000018**

Case: 1:18-cv-07647 Document #: 92 Filed: 10/25/19 Page 60 of 80 PageID #:952

EXHIBIT G

*Connecting the world to Chicago and Chicago to the world.*
*Please contact us with compliments or concerns*
*at aviation@flychicago.com.*
*Connect with us on Twitter: @fly2ohare and @fly2midway*
*To find out more about Chicago's airports, how to do business*
*with the department and ongoing community initiatives,*
*visit www.flychicago.com.*

---

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

<CDA NO CONFIDENCE cover.pdf>

<Evans Email.pdf>

<Temini Altered Lead Assignment Form.pdf>

<Termini Facebook 1.png>

<Termini Statement - Alesia.pdf>

<Termini Statement - Helm.pdf>

<Termini Statement - Martin.pdf>

<Termini Statement - Sanders.pdf>

<Termini text 1.jpg>

<Termini Text 2.jpg>

<Termini_Facebook_Screenshots.zip>

**Defendant Joseph Alesia's MIDP Production 000019**

EXHIBIT G

Statement: Regarding October 4th NO CONFIDENCE Letter

Argentene,

I am tremendously concerned about the ongoing situation. I have been made aware of the disruptive actions alleged of Charlie Termini as well as the allegations made by him. While I cannot corroborate the allegations made by Mr. Termini, these actions have potential jeopardize or significantly delay many our equipment purchases and critical projects. With the delay or loss of these purchases and projects we will not have the required resources to effectively maintain our runways and taxiways. Moreover, the inordinate amount time spent dealing with this leaves less time to handle more critical issues such as equipment funding, accident remediation/prevention, equipment safety, facility expansion and improvements. Finally, his alleged activities have created animus, anger and instability within our organization, all of which has created a toxic work environment. I have been summoned to the Inspectors General office and questioned on these activities and I could not corroborate any allegations of alleged malfeasance on the part of the management team. We need an immediate resolution/end to this so we can move forward and continue to provide effective and quality vehicle services to our airport, our airline partners and to the flying public.

**Eric J Sanders**
Airport Manager - Vehicle Services

10510 W. Zemke Road
Chicago, IL 60666
Telephone: (773) 686-5977
Mobile: (773) 457-3441
Email: Eric.Sanders@cityofchicago.org

CONFIDENTIAL

# EXHIBIT H



PLAINTIFF 000369

# EXHIBIT H

PLAINTIFF 000370



PLAINTIFF 000371

# EXHIBIT H

PLAINTIFF  000372

# EXHIBIT H

PLAINTIFF 000373

# EXHIBIT H

PLAINTIFF  000374



PLAINTIFF 000375



EXHIBIT H

PLAINTIFF  000376

EXHIBIT H

Reply all | ⌄   Delete   Junk | ⌄

**POSTSEASON**

**HOME GAME 1**

*Robert D. Manfred Jr.*
Robert D. Manfred, Jr.
Commissioner of Baseball

RAIN CHECK Subject to the conditions set forth on back hereof.

AT WRIGLEY FIELD

| PRICE | SEAT | ROW | AISLE | GATE | HOME GAME |
|-------|------|-----|-------|------|-----------|
| $170.00 | 4 | 10 | 116 | F | 1 |

CUBS

PLAINTIFF  000377



PLAINTIFF  000378



PLAINTIFF 000379



EXHIBIT H

PLAINTIFF 000380



EXHIBIT H

PLAINTIFF 000381

EXHIBIT H



PLAINTIFF 000382

EXHIBIT 1

Apr 30, 2016, 4:38 PM

Helms

75 people at my first organizational meeting. Thanks for sending Nick and Kevin. I made sure to make mention of you and the Alderman. We are dedicated and ready to roll in 41!
Outstanding!



Kevin Martin

 Nice

Great!!!

Helms



Tue, Oct 11, 11:06 AM

Would it be ok if work days

PLAINTIFF  000402

EXHIBIT 1

next week a few days I been

   Text Message

Search ●○○○○ 📶     7:12 AM     ➤ ✳ 54% 🔋

          ⓘ

Kevin Martin     Helms

Apr 30, 2016, 4:38 PM

Helms

> 75 people at my first organizational meeting. Thanks for sending Nick and Kevin. I made sure to make mention of you and the Alderman. We are dedicated and ready to roll in 41!
> Outstanding!

Kevin Martin

> Nice

Great!!!

Helms

PLAINTIFF 000403

EXHIBIT J

Reply all | ∨    🗑 Delete    Junk | ∨    •••

10:10 AM

Unfortunately yes

10:28 AM

— Dec 11, 2015 —

R U available ? ?

6:37 AM

**B** At 2:30    6:38 AM

**K**    6:39 AM

— Dec 12, 2015 —

**B** I need the petitions tomorrow morning. Have to get them to Dem Party HQ by 11am. Thanks Hector!

1:17 PM

10-4

1:18 PM

**B** ❓❓❓❓❓❓❓❓    1:18 PM

— Dec 16, 2015 —

**B** John Lemond would like to be transferred from the IDOT (Kennedy) yard to the Landscape yard. My seniority should permit this.thanks

1:39 AM

Bill call me please

7:56 AM

**B** In a meeting    7:57 AM

PLAINTIFF  000434

EXHIBIT K



Reply all | ∨   Delete   Junk | ∨   ...

main contact and her number ? I need to get it to Joe Berrios
9:59 AM

**B** To set it ion

Up
10:14 AM

Hey Boss Wilson always set them up lets do it with Wilson ??
10:39 AM

**B** Done
10:39 AM

— Mar 13, 2016 —

**B** Joe called and doesn't think he needs them now. Unreal, let you guys know by the morning
12:42 PM

Whatever you need please let us know
12:42 PM

**B** I appreciate your help. Last minute nonsense.
12:43 PM

— Mar 28, 2016 —

**B** Meet me at 2:30
7:54 AM

**K**
8:20 AM

— Mar 31, 2016 —

**B** Come down
9:08 AM

PLAINTIFF 000439

EXHIBIT L

Reply all | ⌄    🗑 Delete   Junk | ⌄   •••

**I really appreciated thank you**
2:09 AM

**B** Anytime my friend. Don't worry about Jaunita, I'll take care of her officially at shift pick.
2:18 AM

**I really appreciated thank you**
2:19 AM

**B** Hector-disregard only two were filed. One from Midway and the one about the 7183 Bid. No big deal. Thanks
5:29 AM

––––––––––––– May 2, 2016 –––––––––––––

**Good morning Boss Im at the Airport can I have a few minutes with you? ?**
3:19 AM

**B** Come down in 15
3:19 AM

**K**
3:26 AM

––––––––––––– Jun 16, 2016 –––––––––––––

**B** I have another meeting to be at this morning. Can't make it there for the new drivers unless we do this afternoon?
1:58 AM

**Good morning Bill, I have a 4pm at 30 n Lasalle, no worries we can do**

PLAINTIFF  000441