IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| HECTOR HERNANDEZ and CHARLES TERMINI, individually, and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>           v.<br><br>JAMIE RHEE[1], in her official capacity as Commissioner of the Department of Aviation; WILLIAM HELM, in his individual capacity; JOSEPH ALESIA[2], in his individual capacity; KEVIN MARTIN, in his individual capacity; and, the CITY OF CHICAGO, as a municipal corporation and as indemnitor,<br><br>                Defendants. | No.: 18-cv-7647<br><br>Judge John Z. Lee<br><br>Magistrate Judge Sidney I. Schenkier |

**DEFENDANTS CITY OF CHICAGO AND KEVIN MARTIN'S MOTION FOR
SANCTIONS AND FEES PURSUANT TO F.R.C.P. 11 AND 28 U.S.C.A. § 1927**

Defendants City of Chicago and Kevin Martin (collectively "the City"), through their attorney, Mark A. Flessner, Corporation Counsel for the City of Chicago, moves this Court to enter an order against Plaintiffs and their counsel for sanctions and fees pursuant to Fed. R. Civ. P. 11(c) and 28 U.S.C.A. § 1927. In support of its motion, the City states as follows:

**I.      Introduction**

On September 16, 2019, Plaintiffs filed a motion to disqualify the undersigned attorneys. ECF No. 71. On September 23, 2019, the undersigned attorneys sent Plaintiffs' counsel a safe harbor letter pursuant to Fed. R. Civ. P. 11 pointing out the legal and factual deficiencies in Plaintiffs' motion to disqualify and requesting Plaintiffs to withdraw the motion within 21 days. (A true and accurate copy of the 9/23/2019 letter is attached hereto as "Exhibit 1.") On September 27, 2019, Plaintiffs' counsel

---

[1] Jamie Rhee was dismissed with prejudice on February 19, 2019.
[2] Joseph Alesia was dismissed on August 5, 2019.

indicated Plaintiffs would not withdraw their motion to disqualify, without offering sufficient legal or evidentiary justification for the motion. (A true and accurate copy of Plaintiffs' counsel's 9/27/2019 email is attached hereto as "Exhibit 2.") The parties subsequently briefed Plaintiffs' motion to disqualify. On November 11, 2019, this Court denied Plaintiffs' motion. November 11, 2019 memorandum opinion denying Plaintiff's motion to disqualify defense counsel, ECF No. 103.

As explained *infra*, the evidence in this case shows that Plaintiffs filed their motion to disqualify the undersigned attorneys solely for retaliatory, vexatious purposes in violation of 28 U.S.C.A. § 1927, and Fed. R. Civ. P. 11(b)(1). Plaintiffs accused the undersigned attorneys of witness intimidation and improperly contacting represented parties without any factual basis in violation of Fed. R. Civ. P. 11(b)(3). Plaintiffs sought the undersigned attorneys' disqualification for allegedly withholding evidence without legal basis in violation of Fed. R. Civ. P. 11(b)(2) and without factual basis in violation of Fed. R. Civ. P. 11(b)(3). Finally, Plaintiffs sought the undersigned attorneys' disqualification because the City of Chicago's Office of Inspector General ("OIG") issued a subpoena to Plaintiff Hernandez's bank in May 2019, without offering any factual basis supporting their allegations that the undersigned attorneys were involved in the issuance of the subpoena in violation of Fed. R. Civ. P. Rule 11(b)(3), and without offering legal justification supporting disqualification in violation of Fed. R. Civ. P. Rule 11(b)(2). For these reasons, the Court should enter an order awarding the City sanctions pursuant to Fed. R. Civ. P. 11(c)(1) and fees pursuant to 28 U.S.C.A. § 1927.

## II. Background

Upon information and belief, on the evening of July 19, 2019, Mr. Casper, one of Plaintiffs' attorneys, texted a City employee (Nick Thome) asking for then-individually named and represented party, Joseph Alesia's, phone number. After receiving Mr. Alesia's cell phone number, Mr. Casper called Mr. Alesia and discussed allegations contained in the instant matter's complaint. Within days of discovering this communication, Mr. Alesia's attorney, Juanita Rodriguez, investigated the allegation,

and brought this to the attention of all counsel of record on July 29, 2019. After sending Ms. Rodriguez multiple emails denying he engaged in the inappropriate communication, Mr. Casper voluntarily dismissed Mr. Alesia on Saturday, August 3, 2019. Ms. Rodriguez made a complaint with the Illinois Attorney Registration and Disciplinary Commission on August 8, 2019.[3]

On August 16, 2019, the City[4], filed a motion with the Court seeking a stay while the ARDC investigated Ms. Rodriquez's complaint. ECF No. 62. On August 29, 2019, the Court heard the motion to stay. The Court denied the motion to stay and instructed the City:

> to put its money where its mouth is. Okay? Conduct your investigation. Call Mr. Alesia. Figure it out. If you don't think that Mr. Casper should be representing the plaintiffs in this lawsuit, file a motion before me to recuse Mr. Casper from this litigation. I'm not going to wait for the ARDC to do whatever the ARDC does, and so the motion to stay pending the ARDC proceeding is denied. Figure out whether or not you have the grounds to make your accusations. If so, I want you to file a motion in 14 days.

(Transcript from August 29, 2019 hearing, before Judge Lee attached hereto as "Exhibit 3," at:12-21.) The next day, August 30, 2019, one of Plaintiffs' attorneys sent the undersigned attorneys an email indicating Plaintiffs would seek to disqualify Assistant Corporation Counsel Scott Crouch if the City pursued Mr. Casper's disqualification. (Plaintiffs' counsel's August 30, 2019 email is attached hereto as "Exhibit 4.")[5] In the August 30, 2019 email, Plaintiffs' counsel did not identify any of the bases for disqualification that Plaintiffs ultimately alleged in their September 16, 2019 motion for disqualification.

---

[3] These facts are laid out in more detail and with evidentiary support in the City's motion to disqualify Mr. Casper. ECF No. 67.

[4] Corporation Counsel's Office also represented Defendant Bill Helm from January 18, 2019 until October 28, 2019 (ECF No. 16, 17, 18, 93) and thus represented Defendant Helm during the briefing of the cross motions to disqualify.

[5] Plaintiffs' counsel in the August 30, 2019 email, accusing ACC Crouch of a personal vendetta and of a lack of civility without pointing to any evidence or examples. The undersigned attorneys deny Plaintiffs' counsel's characterizations in the email and informed Plaintiffs' counsel of the denial in a subsequent email that same day.

Pursuant to the Court's August 29, 2019 order, the undersigned attorneys subsequently investigated the alleged misconduct. The City filed a motion to disqualify one of Plaintiffs' attorneys on September 11, 2019. ECF No. 67.[6] On September 16, 2019, five days after the City filed its motion, Plaintiffs made good on the August 30, 2019 threat, and moved to disqualify the undersigned attorneys. ECF No. 71.

On September 23, 2019, the undersigned attorneys sent Plaintiffs' counsel a safe harbor letter pursuant to Fed. R. Civ. P. 11(c)(2) pointing out the legal and factual deficiencies in Plaintiffs' motion to disqualify and requested Plaintiffs withdraw their motion within 21 days. (Ex. 1.) On September 27, 2019, Plaintiffs' counsel indicated Plaintiffs would not withdraw their motion to disqualify, but did not offer any legal or evidentiary justification for Plaintiffs' motion to disqualify the undersigned attorneys. (Ex. 2.) The parties subsequently briefed Plaintiffs' motion to disqualify the undersigned attorneys. On November 11, 2019, this Court denied Plaintiffs' motion observing it was "an improper tit-for-tat response to defendants' motion to disqualify plaintiffs own counsel." ECF No. 103, p. 23. The Court also noted:

> Allegations of ethical misconduct, especially ones involving witness intimidation and contacting represented parties, are serious matters that should be supported by tangible evidence. They should not be leveled based on speculation or frustration with other aspects of litigation. Unfortunately, that appears to be what plaintiffs did here.

*Id.*, p. 24. Having previously satisfied Rule 11(c)(2), and having prevailed in opposing Plaintiffs' motion to disqualify, the City now seeks all available sanctions and fees.

### III. Legal Standards

**A. 28 U.S.C. § 1927**

28 U.S.C. § 1927 states that:

---

[6] The Defendants' motion has been fully briefed and the parties are due to return before Magistrate Judge Schenkier for status on December 3, 2019. Magistrate Judge Schenkier previously indicated the Court intends to hold an evidentiary hearing and retain its own Rule 706 expert to evaluate the issues in Defendants' motion to disqualify one of Plaintiffs' attorneys.

4

>Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The 7th Circuit has interpreted "unreasonably and vexatiously" to imply objective or subjective bad faith, and the 7th Circuit "often treat[s] reckless and intentional conduct equally." *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (citing *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir. 1992); *In re TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir. 1985)). U.S. District Courts have authority "under 28 U.S.C. § 1927 to sanction counsel who act recklessly or show indifference to statutes, rules, or court orders." *Lawson v. Chicago Rail Link, LLC*, 12 C 6824, 2013 WL 4401368, at *3 (N.D. Ill. Aug. 15, 2013)(citing *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 799 (7th Cir. 2013)). The filings' timings, taken together with Plaintiffs' counsel's prior threat to file a retaliatory motion, and the Court's ruling that several of Plaintiffs' arguments lack factual and legal support, provide enough evidence for the Court to find Plaintiffs' counsel acted recklessly or intentionally in bringing "an improper tit-for-tat response to defendants' motion to disqualify plaintiffs' own counsel." ECF. No. 103, p. 23.

**B. Motions for Sanctions under Fed. R. Civ. P. 11(c)(2)**

**1. Rule 11(b)'s requirements of good faith filing, and factual and legal support for claims**

Rule 11(b) requires:

>By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
>>(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;[7]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ. P. 11(b)(1)-(3).

Additionally, Rule 11(b)(3)'s requirement that a motion's "factual contentions have evidentiary support" requires tangible evidence. "[R]elying exclusively on conjecture, rather than any legitimate evidentiary basis" violates Rule 11. *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, CV 10-2095 (RC), 2014 WL 12787643, at *6 (D.D.C. Oct. 15, 2014) (citing *Independence Fed. Sav. Bank v. Bender*, 230 F.R.D. 11, 16 (D.D.C. 2005) ("Where a plaintiff makes a factual allegation without evidentiary support, and without the prospect of obtaining such support, sanctions may be appropriate.") *See Gallagher v. Kopera*, 789 F. Supp. 277, 278 (N.D. Ill. 1992) (finding that allegations in the complaint based on rumors and hunches were improper under Rule 11)); *see also Gurwin v. UBS Fin. Servs., Inc.*, No. 07-10323, 2008 WL 1766649, at *3-4 (E.D. Mich. Apr. 16, 2008) (ordering Rule 11 sanctions when plaintiff's counsel pursued tortious interference and defamation claims that were supported only by hearsay and double hearsay, rather than admissible evidence).

### 2. Available sanctions when party violates Rule 11(b)'s requirements

The duties imposed in Rule 11—coupled with the available sanctions—ensure that the "powerful, intimidating, and often expensive" machinery of the federal judiciary "[is] engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). Rule 11 imposes an objective standard of reasonableness on a party's or lawyer's action. *Id.* at 885. As the

---

[7] The City acknowledges that a represented party may not be sanctioned for violating Rule 11(b)(2). Fed. R. Civ. P. (c)(5)(A). Therefore, for the numerous Rule 11(b)(2) violations in Plaintiffs' motion, the City seeks sanctions against Plaintiffs' counsel.

6

Seventh Circuit has explained, the Rule "[leaves] no room for an 'empty head, pure heart' defense." *Id.* Additionally "a bad claim spoils the bunch; one cannot avoid sanctions for frivolous claims simply because they were included with one or more non-frivolous claims." *Novoselsky v. Zvunca*, 324 F.R.D. 197, 202 (E.D. Wis. 2017)(citing *Reed v. Great Lakes Cos., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003)). *See Mac Naughton v. Asher Ventures, LLC*, 17 CV 4050, 2018 WL 4868959, at *3 (N.D. Ill. Apr. 5, 2018), *report and recommendation adopted,* 17 CV 4050, 2018 WL 4868958 (N.D. Ill. July 18, 2018)("And even though they contend they had other valid arguments to support their motion, that fact would not bar sanctioning Defendants for requiring [Plaintiff] to have to oppose a frivolous claim among other non-frivolous claims.")(Citing *Novoselsky*, 324 F.R.D. at 202)). As explained *infra*, Plaintiffs' motion for disqualification included multiple frivolous claims that violated multiple prongs of Rule 11(b).

Under Rule 11 sanctions should be tailored "to deter repetition of the conduct or comparable conduct by others similarly situated[]" and

> sanction[s] may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4).

### 3. Rule 11(c)(2) safe harbor requirements

Before a party may move for sanctions under Rule 11, it must serve the party or attorney who violated Rule 11(b) with a motion or – in the 7th Circuit - a letter detailing the grounds for sanctions and provide the offending party at least 21 days to withdraw the filing. Fed. R. Civ. P. 11(c)(2). *See N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 887 (7th Cir. 2017)(citing *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003)(substantial compliance with Rule 11(c)(2) where "the defendants sent a letter—rather than a motion—that explained the grounds for sanctions and provided more than 21 days to remedy the problem.")

Here, the undersigned attorneys sent Plaintiffs' attorneys a 10-page letter on September 23, 2019, explicitly detailing how several arguments in Plaintiffs' motion violated Rules 11(b)(1)-(3). Ex. 1. In the same letter, the undersigned attorneys gave Plaintiffs' counsel 21 days to withdraw the motion. *Id.* Finally, the undersigned indicated they would seek sanctions if forced to litigate Plaintiffs' frivolous motion. *Id.* On September 27, 2019, Plaintiffs' counsel indicated Plaintiffs would not withdraw their motion to disqualify, without offering any legal or evidentiary justification for Plaintiffs' motion to disqualify the undersigned. Ex. 2.

Plaintiffs' counsel had ample notice and opportunity to withdraw the motion, was aware of the potential consequences, and nevertheless forced the City to litigate Plaintiffs' frivolous allegations. Accordingly, Rule 11 sanctions are appropriate here as the City complied with Rule 11(c)(2)'s requirements.

**C. A U.S. District Court's inherent power to issue sanctions**

"Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). U.S. District Courts may - independently of Fed. R. Civ. P. Rule 11 and 28 U.S.C. § 1927 - "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46 (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59 (1975)) (internal quotations omitted). As Plaintiffs brought a motion containing several arguments lacking factual support and failed to cite relevant authority to support many of their arguments, there is sufficient evidence for the Court to use its inherent power to find that Plaintiffs and their counsel acted in bad faith, vexatiously, wantonly, or for oppressive reasons, and sanction Plaintiffs and their counsel for filing a baseless motion for retaliatory purposes.

8

## IV. Argument

**A. Plaintiffs brought their motion in bad faith for retaliatory purposes.**

As the undersigned pointed out in the safe harbor letter, Plaintiffs' counsel threatened seeking defense counsel's disqualification in an attempt to discourage the undersigned attorneys from investigating or pursuing Mr. Alesia's allegation that Mr. Casper contacted him in violation of ABA Model Rule 4.2. Ex. 1, pp. 1-2; Ex. 4. In their motion, Plaintiffs raise multiple issues that occurred between December 2018 and late July 2019. ECF No. 71. The fact that Plaintiffs waited to raise these issues with the Court until September 16, 2019 - five days after Defendants filed a motion seeking one of Plaintiffs' attorney's disqualification - evinces that Plaintiffs' professed concerns were not genuine but were raised only for vexatious and retaliatory reasons in violation of Rule 11(b)(1) and 28 U.S.C. § 1927. The Court, in denying Plaintiffs' motion to disqualify, made a similar observation:

> Plaintiffs' motion to disqualify Corporation Counsel strikes us as an improper tit-for-tat response to defendants' motion to disqualify plaintiffs' own counsel. Despite identifying conduct that has allegedly occurred for several months, plaintiffs did not bring this motion until after defendants filed their motion to disqualify. Plaintiffs' lead attorney acknowledges that the motion came "on the heels of the City's own efforts to disqualify" him, but contends that he only became aware of a basis to disqualify Corporation Counsel while preparing his response to defendants' motion (Pl's Mot. [ECF No. 71] at 2). We are skeptical that an attorney who has practiced law for approximately 10 years, as has plaintiffs' attorney . . . would realize that "repeated, ongoing, continuous, and incessant ethical infractions" could lead to disqualification (*see* Pl's Mot. [ECF No. 71] at 2) only after his opponent sought his disqualification. But even suggesting this contention is problematic as it suggests that plaintiffs' attorney does not firmly grasp the scope of an attorney's ethical duties.

ECF No. 103, pp. 23-24. Plaintiffs' counsel's indication that he only had the idea to seek the undersigned attorneys' disqualification after the City filed its September 11, 2019 motion to disqualify him is belied by the fact that his co-counsel sent an email two weeks earlier threatening to seek one the undersigned attorneys' disqualification if the City pursued the motion to disqualify Mr. Casper. (Ex. 4). Plaintiffs' counsel planned on filing a retaliatory motion to disqualify since the Court raised the possibility that the City might pursue its own motion to disqualify. Based on the Court's findings

in denying the motion to disqualify Corporation Counsel and based on the evidence of Plaintiffs' counsel's retaliatory motive, the Court should rule that Plaintiffs' Motion to Disqualify Corporation Counsel (ECF. No. 71) violated Rule 11(b)(1) and 28 U.S.C. § 1927's prohibition on unreasonable, vexatious and bad faith filings and sanction Plaintiffs and their counsel.

**B. Plaintiffs' allegations that Corporation Counsel engaged in witness intimidation or improper contact with represented parties are not supported by evidence and thus violate Rule 11(b)(3).**

Plaintiffs allege Corporation Counsel intimidated Nick Thome in violation of ABA Model Rules 3.4 and 4.4. ECF. No. 71, pp. 6-7. As the Court noted, Plaintiffs' only support for this proposition is a reliance on "Mr. Termini's recounting of these alleged statements to prove the truth of Mr. Thome's alleged intimidation, [which] are likely inadmissible hearsay." ECF. No. 103, p. 7, n. 8. Hearsay does not satisfy Rule 11(b)(3)'s requirement that filings have evidentiary support. *See Gallagher v. Kopera*, 789 F. Supp. 277, 278 (N.D. Ill. 1992) (finding that allegations in the complaint based on rumors and hunches were improper under Rule 11) *see also Gurwin v. UBS Fin. Servs., Inc.*, No. 07-10323, 2008 WL 1766649, at *3-4 (E.D. Mich. Apr. 16, 2008) (ordering Rule 11 sanctions when plaintiff's counsel pursued tortious interference and defamation claims that were supported only by hearsay and double hearsay, rather than admissible evidence). The Court also noted that even if were to consider the hearsay, "none of this constitutes evidence that Corporation Counsel violated either Rule 3.4 or Rule 4.4." ECF. No. 103, p. 7.

Plaintiffs also allege that Corporation Counsel violated Model Rule 4.2 because City employees allegedly spoke to Plaintiffs about the instant litigation. ECF. No. 71, pp. 3-6. In response to this allegation the Court found:

> Missing from these assertions is any evidence that Corporation Counsel directed any of plaintiffs' co-workers to talk to them about anything pertaining to this lawsuit or to engage in any of the aforementioned conduct. . . . In short, plaintiffs have provided no evidence suggesting that Corporation Counsel has violated Model Rule 4.2 by communicating with them through others.

ECF No. 103, p. 5.

> As the Court aptly notes in its concluding remarks:
>
> Allegations of ethical misconduct, especially ones involving witness intimidation and contacting represented parties are serious matters that should be supported by tangible evidence. They should not be leveled based on speculation or frustration with other aspects of litigation. Unfortunately, that appears to be what plaintiffs did here.

*Id.*, p. 24. In sum, Plaintiffs accused the undersigned attorneys of serious misconduct with no factual support or based only on hearsay, which the Court noted even if it were admissible, was insufficient to support Plaintiffs' allegations. Plaintiffs abused the "powerful, intimidating, and often expensive" machinery of the federal judiciary either for the improper purpose of trying to publicly humiliate the undersigned attorneys or with reckless disregard that it would have that effect, solely in retaliation for the undersigned attorneys' good-faith efforts to explore allegations that one of Plaintiffs' counsel violated ABA Model Rule 4.2. *N. Ill. Telecom, Inc.*, 850 F.3d at 883. The undersigned attorneys alerted Plaintiffs' attorneys of these issue via a Rule 11 letter. Ex. 1, pp. 2-5. However, Plaintiffs forced the undersigned attorneys to waste time and resources responding to serious accusations brought with no factual support. Plaintiffs and their attorneys' conduct violates Rule 11(b)(3) and 28 U.S.C. § 1927. Accordingly, Plaintiffs and their counsel should be sanctioned and ordered to pay fees.

**C. Plaintiffs' argument that the OIG's subpoena to Mr. Hernandez's bank warranted Corporation Counsel's disqualification violate Rule 11(b)(1),(2), & (3).**

In May 2019, the OIG sent Mr. Hernandez's bank, PNC Bank, a subpoena for Mr. Hernandez's bank records pursuant to the OIG's subpoena power under Municipal Code of Chicago §§ 2-56-030(h), and 2-56-040. On May 10, 2019, PNC Bank sent Mr. Hernandez a letter notifying him of the subpoena. OIG subpoena and PNC Bank letter to Mr. Hernandez, ECF No. 71-5.

In July 2019, Plaintiffs' counsel brought the subpoena to Corporation Counsel's attention, and served Corporation Counsel with a draft motion for protective order related to the OIG subpoena. (Plaintiffs' counsel's July 16, 2019 email with draft protected order attached hereto as "Exhibit 5.")

11

The parties met and conferred on July 19, 2019, and the undersigned attorneys subsequently sent Plaintiffs' counsel correspondence affirming that:

- the OIG subpoena was not sent in coordination with Corporation Counsel's litigation efforts;

- Corporation Counsel's attorneys were not responsible for the OIG subpoena's issuance;

- the Corporation Counsel attorneys involved in litigating the instant matter were not privy to the details of OIG's ongoing investigations; and

- the Corporation Counsel attorneys involved in litigating the instant matter did not possess documents relevant to OIG's ongoing investigations.

July 24, 2019 Ltr. from S. Crouch to C. Casper, ECF No. 78-2. Until Plaintiffs' September 16, 2019, motion to disqualify the undersigned, Plaintiffs' counsel did not pursue the OIG subpoena issue further after the July 24, 2019 correspondence from Corporation Counsel. To the contrary, Plaintiffs' counsel confirmed during the July 19, 2019 Rule 37.2 conference that he did not believe the Corporation Counsel were personally involved in the subpoena's issuance.[8] The fact that Plaintiffs then included allegations regarding the OIG's subpoena in their motion to disqualify Corporation Counsel further evinces their bad faith in bringing the motion. As the Court found in its memorandum opinion:

> Plaintiffs have not shown that the OIG subpoena warrants disqualifying Corporation Counsel. We start with the fact that there is no evidence that Corporation Counsel had anything to do with the issuance of the OIG subpoena. . . . Plaintiffs do not provide any evidence contradicting [Corporation Counsel's] assertions or any other basis to question them. Without evidence of coordination between the OIG and Corporation Counsel, we do not see any basis for holding Corporation Counsel responsible for the OIG's actions.

ECF No. 103, p. 14.

---

[8] The undersigned memorialized this understanding in their July 24, 2019 letter ECF No. 78-2, p.4. Plaintiffs' counsel did not contradict this representation.

Plaintiffs' lack of evidence to support their accusations violates Rule 11(b)(3). The fact that Plaintiffs raised the issue months after it first surfaced in an "improper tit-for-tat response to defendants' motion to disqualify plaintiffs' own counsel" (ECF No. 103, p. 23) violates Rule 11(b)(1) and 28 U.S.C. § 1927.

Additionally, Plaintiffs fail to cite any case law supporting their proposition that the OIG Subpoena warrants Corporation Counsel's disqualification. "Plaintiffs do not contend that the issuance of the OIG subpoena violates any rule of professional conduct." ECF No. 103, p. 14. The Court further held there was no legal basis for Plaintiffs' argument that the OIG Subpoena warranted Corporation Counsel's disqualification: "[e]ven if Corporation Counsel knew about the OIG Subpoena prior to its issuance . . . and had an obligation to notify plaintiffs about the subpoena before it went out, there was no prejudice from Corporation Counsel's failure to do so." *Id*. The fact that Plaintiffs sought the undersigned attorneys' disqualification for the OIG Subpoena without offering any legal support violates Rule 11(b)(2).[9]

**D. Plaintiffs have not provided any evidence that the undersigned attorneys improperly withheld documents or that such a withholding warrant disqualification.**

Plaintiffs allege, *inter alia*, that Mr. Alesia did not produce documents until July 23, 2019, and that this failure to turn over documents in a timely manner violated ABA Model Rules 1.3, 3.4, and the Court's MIDP Standing Order. (ECF No. 71, pp. 9-11.) As the undersigned attorneys pointed out in their safe harbor letter (ex. 1, pp. 7-8) and as the Court held in its memorandum opinion:

> Significantly, plaintiffs do not cite a single case that has invoked Model Rule 1.3 or Model Rule 3.4 to disqualify counsel based on an alleged failure to produce relevant discovery in a timely manner. Nor do plaintiffs cite a single case that supports disqualification as a remedy for an alleged violation of the court's MIDP Standing Order. . . .

ECF 103, pp. 12-13.

---

[9] *See* footnote 7, *infra*.

Regarding Mr. Alesia's emails specifically the Court noted "the bulk of plaintiffs' argument is directed to *Mr. Alesia*'s alleged five-plus month delay in producing emails" that Corporation Counsel stopped representing Mr. Alesia on February 10, 2019[10] and that Plaintiffs failed to show "why the alleged untimeliness in Mr. Alesia's production should be imputed to Corporation Counsel." (ECF 103, p. 13)(emphasis original). Plaintiffs' lack of factual basis to accuse the undersigned attorneys of improperly withholding documents that Mr. Alesia produced through his counsel, and Plaintiffs' lack of legal support for their argument that this alleged violation warrants disqualification violates Rules 11(b)(2) and (3).

### V. Conclusion

In August, Plaintiffs' counsel threatened to file a retaliatory motion to disqualify if the City pursued a motion to disqualify Mr. Casper. Plaintiffs subsequently followed through on their threat and filed a motion publicly accusing the undersigned attorneys of numerous serious ethical violations without factual or legal basis to do so. The undersigned attorneys requested Plaintiffs withdraw the motion, and despite having ample opportunity to do so, Plaintiffs forced the City to expend time and effort responding to these frivolous allegations. Rule 11(c), 28 U.S.C.A. § 1927, and the Court's inherent power all permit the Court to award fees and impose additional monetary sanctions to deter conduct such as Plaintiffs'. The undersigned attorneys spent a combined total of approximately 40 hours researching Plaintiffs' allegations, preparing the safe harbor letter, responding to the motion, and researching and writing this motion for sanctions.[11]

---

[10] Scott Crouch, one of the attorneys Plaintiffs sought to disqualify, joined Corporation Counsel's office in June 2019, filed his appearance in July 2019 (ECF No. 53), and has never represented Joseph Alesia in this litigation.

[11] The City's understanding of sanctions proceedings is that first the Court will decide whether sanctions are appropriate and that if the City prevails it will then be allowed to file a detailed fee petition. If the Court would prefer to consider a fee petition simultaneously with the motion for sanctions the City would request a short deadline to comply with any such order.

For the foregoing reasons, the City requests the Court enter an order of sanctions against Plaintiffs and their counsel, and award fees to the City. The City additionally requests the Court enter an order sanctioning Plaintiffs and their attorneys for any additional amount the Court deems sufficient to "to deter repetition of the conduct or comparable conduct by others similarly situated[]" Fed. R. Civ. P. 11(c)(1), and for such other relief as the Court deems necessary and just.

Dated: November 22, 2019

Respectfully submitted,

MARK A. FLESSNER
Corporation Counsel of the City of Chicago

By: */s/ Scott Crouch*
Scott Crouch
*/s/ Jessica R. Durkin*
Jessica R. Durkin
Assistants Corporation Counsel

City of Chicago, Department of Law
Employment Litigation Division
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-2836/8369
Jessica.durkin@cityofchicago.org
Scott.Crouch@cityofchicago.org