**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

HERNANDEZ, *et al.*

               Plaintiffs,

           v.

JAMIE RHEE, *et al.*,

           Defendants.

Case No. 18-cv-7647

Hon. Franklin U. Valderrama
District Judge

**DEFENDANTS RESPONSE TO PLAINTIFFS'**
**AMENDED 56.1 (B)(3)(C) STATEMENT OF ADDITIONAL FACTS**

      Defendant, City of Chicago ("the City") by its attorney, Celia Meza, Acting Corporation

Counsel for the City, and Defendant, Bill Helm, by his attorneys, Michael Best & Friedrich LLP,

respond to Plaintiffs' Amended Northern District of Illinois Local Rule 56.1(b)(3)(C) Statement of

Additional Facts (Dkt. 179) as follows:

      1.   Hernandez testified that he stopped canvassing for political candidates for Bill Helm because

he got so angry with Bill Helm making him work politics, and it gave him a bad taste in his mouth.

*Hernandez Dep.,* Ex. 1, p.103:2-15.

      **RESPONSE: Defendants admit the facts in paragraph 1.**

      2.   Hernandez testified that Bill Helm would harass him to get money from the Teamsters to

give to political candidates. *Hernandez Dep.,* Ex. 1, p.128:9-24, 129:1-4.

      **RESPONSE: Defendants object to the term "harass" as vague, and Defendants further**

**object to these facts as immaterial as they occurred outside of the statute of limitations and do**

**not consist of a "refusal". Plaintiff's Response to Defendants' 56.1(a) Statement of Uncontested**

**Facts (PRSOF) 64; *see De v. City of Chicago*, 912 F. Supp. 2d 709, 712-13 (N.D. Ill. 2012)**

**("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely**

**speculative factual allegations" are improper under Local Rules 56.1 and further finding the**

assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005)). Notwithstanding said objections, Defendants admit for the purpose of summary judgment the fact that between 2014 and 2016 Helm would ask Hernandez to ask the Teamsters to donate to political fundraisers.

3. Hernandez complained to Michael Ruemmler from the Mayor's Office, and to the City of Chicago Office of the Inspector General regarding Bill Helm's requests for Hernandez to procure money for Pat O'Connor. *Hernandez Dep.,* p.132:4-22.

**RESPONSE: Defendants object to the fact that Hernandez complained to Ruemmler in November 2014 as it is immaterial and outside the statute of limitations, and therefore fails to comply with L.R.56.1(a)(3). *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit that Hernandez testified that he complained to Ruemmler in November 2014 and the OIG in January 2018 that Helm requested Hernandez procure money for Pat O'Connor's political campaign.**

4. Hernandez made reports to DOA Officials Robert May in or around January 2017, and Robye Scott about Helm's requests for political favors and everything that is alleged in this lawsuit. *Hernandez Dep.,* Ex. 1, p.137:4:24, 138:1:22.

**RESPONSE: Defendants object to the fact that Hernandez made reports to DOA officials, which is immaterial because they are not a law enforcement agency under the**

IWA. 740 ILCS 174/15(b); *see also De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit that Hernandez testified he made reports to Robert May and Robye Scott regarding the allegations in paragraph 4.

5.   Hernandez testified that after a while he got tired of Bill Helm harassing him and other drivers to go to political functions, to give money, and to attend events for candidates. *Hernandez Dep.,* Ex. 1, p.139:15-24, 140:1-21. Hernandez got tired of Helm and Martin watching drivers, looking for them, and threatening repercussions for not engaging in political activities. *Hernandez Dep.,* Ex. 1, p.142:1:15.

**RESPONSE: Defendants object to the facts in paragraph 5 as failing to comply with L.R.56.1(a)(3) because it contains an inaccurate and incomplete citations to the record. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). In the testimony cited, Hernandez testified he "wasn't really bothered" by the requests at the "beginning" (Hernandez Dep., Ds' Ex. 1, p. 139:21–24) and "it took awhile" to get "tired" and "frustrated" (*Id.,* p. 141:2–14). He subsequently testified in the cited sections that he sought "whistleblower status" in January 2017 by speaking to Robert May because he "knew" once he "told [his] side of the story of what Bill Helm was doing [Helm] would**

come after [Hernandez]". That statement lacks foundation for the contention that Helm would "come after" Hernandez. *See Curry v. City of Chicago*, No. 10 CV 8241, 2013 WL1283477, at *8 (N.D. Ill. Mar. 25, 2013) (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Notwithstanding said objections, Defendants admit that Hernandez testified that he got "tired" of Helm asking him for "money" and "going to meetings." (Hernandez Dep., Ds' Ex. 1, pp. 139:22–140:5). Defendants, however, dispute as immaterial, the remaining allegations in paragraph 5.

6. Hernandez saw multiple truck drivers and other DOA staff at meetings for former Alderman Patrick O'Connor at Helm's behest, including: Tomasz Dorosz, Oscar Polanco, Charles Termini, John Revere, Michael Bertoni, Michael Cully, Gina Michalik, Joseph Mannerino, James Glaesser, Edward Lammersfeld, Scott Kargol, Russ Zizzo, Brian Pagani, Daniel Stenson, Robert Castillo, Richard Sendra, Ignacio Garcia, Ross Anthos, Brad Buican, Rafael Silva, Wendy Harling, John Cianci, Douglas Miller, Joseph Santello, Joseph Mongolis, Steve Pascua, Joseph LaRucci, Steven Davis, James Janda, Julio Garcia, Nick Thome, Michael Kehoe, Lisa Tudisco, Lawrence Magana, Michael Leonard, Marquette Dunn, Daniel Aviles, Gary Davis, Dana Rotondo, Charles Topczewski, Lisa Ellerman, William Remos, Brian Horwick, Steve De Cesare, Thomas Leiding, Lawrence Kearns, and others. *Hernandez Dep.,* Ex. 1, pp.113:16-24, 114:1-22.

**RESPONSE:** Defendants object to the allegations in paragraph 6 because the use of the phrase "at Helm's behest" is vague. It is unclear if Hernandez alleges he was at the meeting at Helm's behest or if the other listed DOA employees were at the meeting at Helm's behest. If Hernandez is alleging the latter interpretation, he lacks a foundation to make that allegation; there is no evidence that these DOA employees attended political functions at Helm's request. Defendants, however, admit that Hernandez testified that he

4

saw the listed DOA employees listed in paragraph 6 at meetings for Alderman O'Connor's political campaign.

7. In 2015, eight out of the top ten overtime earners at DOA Hernandez had seen perform Helm-requested political work, with the top overtime earner in that range being Tomasz Dorosz at $37,518.64 and the lowest earner in that top ten received $24,283.75. *Hernandez Dep.,* Ex. 1, pp.113:16-24, 114:1-22, Deposition Exhibit 3. Hernandez only made $10,051.53 in 2015. *Id.*

**RESPONSE: Defendants object to the fact of the overtime earned in 2015 as it fails to comply with L.R.56.1(a)(3) as it is immaterial and outside the statute of limitations as Plaintiffs concede (Ps' Resp., p. 2.).** *See De***, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Moreover, the citation is inaccurate as Hernandez did not testify that he had seen the persons "perform Helm-requested political work". Instead, Hernandez testified that he saw the persons at "Pat O'Connor meetings" that he also attended. (Hernandez Dep., Ds' Ex. 1, pp. 113:16–115:8.) Finally, this claim lacks foundation because there is no evidence that these 42 MTDs attended the political functions at Helm's request and there is no evidence they received more overtime than Hernandez because of their attendance at these meetings --- meetings which Hernandez also attended.** *See Curry***, 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay.) Notwithstanding said objections, Defendants admits Dorosz earned $37,518.64 in overtime in 2015 and Hernandez earned $10,051.53 in overtime in 2015. Defendants dispute the remaining allegations.**

5

.    8.    In 2015, 42 drivers identified by Hernandez as performing political activities for Helm earned more in overtime than he did, ranging from $10,118.42 for William Remos, to $37,518.64 for Tomasz Dorosz. *Hernandez Dep.,* Ex. 1, pp.113:16-24, 114:1-22, Deposition Exhibit 3.

**RESPONSE: Defendants object to the reference to overtime earned in 2015 as it fails to comply with L.R.56.1(a)(3) as it is immaterial and outside the statute of limitations as Plaintiffs concede (Ps' Resp., p. 2.) *See De,* 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further object to the fact that Hernandez alleges that the 42 drivers "perfomed[ed] political activities for Helm" as it lacks foundations, and there is no evidence that these 42 MTDs attended the political functions at Helm's request, and there is no evidence they received more overtime than Hernandez because of their attendance at these meetings --- meetings which Hernandez also attended. *See Curry,* 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay.) Notwithstanding said objections, Defendants do not dispute the 2015 overtime numbers cited nor do Defendants dispute that Remos and Dorosz earned more overtime in 2015 than Hernandez.**

9.    According to the Collective Bargaining Agreement governing Motor Truck Drivers, overtime is to be equalized. *Hernandez Dep.* p. 45:10-17, Ex. 8. *See generally Ex. 8,* pp. 14-15 (providing a procedure for distributing overtime by seniority).

**RESPONSE: Defendants object to the facts in paragraph 9 as failing to comply with L.R.56.1(a)(3) because it contains an inaccurate and incomplete citations to the record.**

Defendants further object to the term "equalized" as vague. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants dispute that the CBA uses the term "equalized" or "equal" anywhere, particularly not in the pages cited. Defendants admit the text of the CBA requires overtime to be offered "first to the employee performing the job [requiring overtime] and thereafter by seniority to the most senior employee in the job classification at the work location being given the opportunity to work provided the employee has the present ability to perform the work to the satisfaction of the Employer without further training." (Ds' Ex. 8, CBA, at Bates range: "Hern. Def. 101– 103"; Ds' Ex. 2, Termini Dep., at p. 108:2–10.)

10. Termini testified that LEAD drivers earn more overtime in the snow seasons because they get called in first before any other drivers to lead the snow teams. *Charles Termini Dep.,* Ex. 2, p.28:15-24; p.29:1. Kevin Martin was instrumental in picking which driver was placed on which LEAD assignment, such as removing Joan Carter from the de-icer farm position, which reduced the amount of overtime she earned. *Charles Termini Dep.,* Ex. 2, p.260:1-23, p.261:121.

RESPONSE: Defendants object to the fact that Lead drivers earn more overtime as immaterial for failing to comply with L.R.56.1(a)(3) as Hernandez received a Lead position every year he requested one, and Termini does not allege that he was deprived of any overtime. (Ds' Ex. 2, Termini Dep., at p. 205:11–12, 249:5–7, 252:4–6.) Defendants further object to the term "instrumental". *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual

**allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674); PRSOF 39. Notwithstanding said objections, Defendants admit that Joan Carter was not given her de-icer Lead position back after she returned from a medical leave, and she earned less overtime when she was no longer a lead. (Carter Dep., Ps' Ex. 2, at 19:13-24.) Defendants further admit that Lead drivers often earn more in overtime than non-lead drivers.**

11. Hernandez identified a text message chain between himself and Bill Helm proving Helm's numerous requests for political work and resources from Hernandez between in or around July 2015 and April 2018. Hernandez Dep., Ex. 1, p.285:4-24. These texts include the following:

- July 20, 2015 from Helm to Hernandez: "Any word on those drivers?"

- July 29, 2015 from Helm to Hernandez: "Pat [O'Connor] and I are grateful for help with these requests. Thanks."

- September 17, 2015 from Helm to Hernandez: "I will have petitions ready tomorrow."

- December 12, 2015 from Helm to Hernandez: "I need the petitions tomorrow morning. Have to get them to Dem Party HQ by 11 a.m. Thanks Hector!"

- December 16, 2015 from Helm to Hernandez: "John Lemond would like to be transferred from the IDOT (Kennedy) yard to the Landscape yard. My seniority should permit this. Thanks"

- March 10, 2016 from Helm to Hernandez: "Any word from Berrios? I would like to get him the information asap. I'm going to be swamped all weekend! Thanks Hector."

- February 17, 2016 from Helm to Hernandez: "WTF. Leads and 7183 until 7pm. We'll make it up this week. Hector T was making calls today."

- March 13, 2016 from Helm to Hernandez: "Joe [Berrios][1] called and doesn't think he needs them now. Unreal, let you guys know by the morning."

- On or about March 12, 2016 from Hernandez to Helm: "I understand we have thus far 7 volunteers working on getting you the other 3." Helm's Response: "My man!"

- March 12, 2016 from Hernandez to Helm: "Fwd: I have seven ladies so far. I will send you the names today. Hey Boss can you please make sure Berrios knows he has to pay them $150, I would really appreciate that. Helm's Response: "He is sir." '**** Hernandez' Response later in the chain: "Hey Boss can we get an address and time for these people."

- On or about May 2, 2016 from Helm to Hernandez: <u>**"Don't worry about Jaunita, I'll take care of her officially at shift pick."**</u>

**RESPONSE: Defendants object to paragraph 11 as it improperly combines multiple facts into one statement in violation of Local Rule 56.1.** *See Malec v. Sanford,* **191 F.R.D. 581, 583 (N.D.Ill.2000)("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response. Again, it is inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one.") Defendants further object, as the text messages do not make "political requests", so paragraph 11 fails to comply with L.R.56.1(a)(3) as it is an inaccurate citation to the record. The April 2016 text from Helm offering congratulations on Hernandez's position of business agent; the December text wished "Merry Christmas"; the April 1, 2018 text wished Hector "Happy Easter".** *See De***, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or**

---

[1] The prior text in this message chain indicates that they are referring to Joe Berrios.

"nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Moreover, Hernandez has testified that he last refused to do political work for Helm in March 2016. PRSOF 25. Notwithstanding said objections, Defendants admit the text messages cited are accurate. Defendants dispute that the text messages after May 2, 2016 involve Helm requesting political work or resources.

12. Helm has authority and actual involvement in selecting drivers for assignments, shifts, and positions at DOA as noted in his text message to Hernandez on or about May 2, 2016 indicating that he would take care of "Jaunita" "officially at shift pick." Hernandez Dep., Ex. 1, p.285:4-24.

RESPONSE: Defendants object to the fact Helm had "authority and actual involvement" in driver assignments because the facts in paragraph 12 are pure speculation, and moreover, the facts involving "shifts" are immaterial because neither Plaintiff is alleging that their shift assignments were adverse actions. *See De,* 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants dispute that Helm had authority to makes assignments as Plaintiffs have agreed that lead assignments (which are an alleged adverse action in this case) were at the "discretion of the Foreman" PRSOF 37. Defendants admit that Helm set a text message on May 2, 2016 indicating, "Anytime my friend. Don't worry about Juanita, I'll take care of her officially at shift pick."

13. Hernandez sent a text message to Alderman Patrick O'Connor on February 22, 2016 asking to speak with him at an appointment. Hernandez Dep., Ex. 1, p.303:21-24, p.304:1-24, Deposition Exhibit 11. When Hernandez went to meet with Alderman O'Connor shortly after February 22, 2016, Bill Helm was present for the meeting. Hernandez Dep., Ex. 1, p.304:15-21. Hernandez wanted to complain about what Bill Helm was doing, but was uncomfortable doing so when Bill Helm was present. Hernandez Dep., Ex. 1, p.304:9-21.

**RESPONSE: Defendants object to the fact that Hernandez contacted and met with Alderman O'Connor in February 2016 as it fails to comply with L.R.56.1(a)(3) because it is immaterial and outside the statute of limitations. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit.**

14. Hernandez identified emails at Deposition Exhibit 12 reflecting requests for political activity, in general, from Bill Helm. Hernandez Dep., Ex. 1, p.306:13-24, p.307:1-24.

**RESPONSE: Defendants object to the fact that Helm requested political activity in the November 12, 2014 and February 4, 2015 emails cited as they fail to comply with L.R.56.1(a)(3) because they are immaterial and outside the statute of limitations. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further object because Ex. 12 does not consist entirely of emails, nor are all the**

emails in Ex. 12 from Bill Helm. (*See* Ex. 12 to Hernandez's deposition (Ds' Ex. 1)). Notwithstanding said objections, Defendants admit that Plaintiff's 659 dated February 4, 2015, Plaintiff's 662 dated November 12, 2014, and Plaintiff's 664 dated November 12, 2014 show Helm requesting Hernandez to do political activity. Defendants further admit that Plaintiff 666 is a duplicate of 664 showing a November 12, 2014 request from Helm to Hernandez. Defendants dispute that the remaining portions of Ex. 12 reflect Hem requesting political activity.

15. One of the emails in Exhibit 12 dated January 29, 2015 identified by Hernandez contains the following statement from Bill Helm: "There isn't a problem with the salt team and Juanita as long as the work is done and it has been. The other on the discipline was directly from Dawna Harrison and Eric Sanders who wanted suspensions and transfers for all 3. **Obviously that didn't happen my friend!**" Hernandez Dep., Ex. 1, p.306:13-24, p.307:1-24, Deposition Exhibit 12.

**RESPONSE: Defendants object to the facts in paragraph 15 as they fail to comply with L.R.56.1(a)(3) because they are immaterial and outside the statute of limitations as they occurred in 2015. *See De,* 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). The facts alleged in paragraph 15 also are immaterial because they do not refer to any actions taken with respect to the plaintiffs in this case. Notwithstanding said objection, the Defendants admit.**

16. Charles Termini produced the overtime records at Deposition Exhibit 44. He did so by obtaining overtime records from the City of Chicago's website and then filtering them by job title and department for each year. His declaration attests that these records are true and accurate copies of the

records he obtained from the City of Chicago's website, and the filtering he personally did using search parameters within the records based on job title and department assignment. *Termini Declaration,* ¶2.

**RESPONSE: Defendants object to the facts om paragraph 16 as they fail to comply with L.R.56.1(a)(3) because they are immaterial because the overtime records fail to show overtime *opportunities*. PRSOF 19. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Further, records showing overtime earned outside the limitations period are likewise immaterial. Notwithstanding said objection, the Defendants admit for summary judgment purposes only that the records accurately reflect the amount of overtime earned, but Defendants dispute that the records accurately reflect overtime opportunities offered to MTDs.**

17. Deposition Exhibit 44 reflects a wide disparity in overtime distribution between the highest-earners and the lowest earners on the list, as follows:

    a.   2015: $37,518.64 - $26.27 (*Termini Declaration*, ¶2, Deposition Exhibit 44, Bates Plaintiff 70 - 91).

    b.   2016: $$36,440.99 - $80.10 (*Termini Declaration*, ¶2, Deposition Exhibit 44, Bates Plaintiff 92 - 115).

    c.   2017 (1/2 year data): $14,544.48 – 27.1 (*Termini Declaration*, ¶2, Deposition Exhibit 44, Bates Plaintiff 116-134).

**RESPONSE: Defendants object to the facts in paragraph 17 because the overtime records fail to show overtime opportunities and therefore fail to comply with L.R.56.1(a)(3)**

because they are immaterial. **PRSOF 19.** *See De,* **912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing** *Roger Whitemore's Auto. Servs., Inc.,* **424 F.3d at 674). Further, facts alleged regarding overtime earned outside the limitations period are likewise immaterial. Notwithstanding said objection, the Defendants admit for summary judgment purposes only that the numbers are accurate as to overtime earned by the highest and lowest earners. Defendants dispute that the numbers accurately reflect overtime opportunities offered to MTDs.**

18. Joan Carter was a Motor Truck Driver at O'Hare for the Department of Aviation, and had been assigned as a LEAD at the de-icer shack between 2007 up until June 2017. Carter Deposition, Ex. 2, p.12:16-24, p.13:1-21. In fall 2017, Carter was suddenly reassigned away from the LEAD position at the de-icer farm (that she had worked since 2007), and was reassigned to work the labor vehicle. Carter Deposition, Ex. 2, p.34:4-21. Bill Helm and Kevin Martin reassigned Russ Zizzo to the LEAD position at the de-icer farm, which she knew because that is what Kevin Martin told her in his office in October 2017. Carter Deposition, Ex. 2, p.36:222. Wilson Vazquez confirmed seeing Russ Zizzo at campaign events for Alderman O'Connor and Mayor Emmanuel. Vazquez Deposition, Ex. 3, p.92:1-11.

**RESPONSE: Defendants object to the facts in paragraph 18 as they fail to comply with L.R.56.1(a)(3) because they immaterial as Carter is not a Plaintiff in this case, and there are no allegations that Hernandez went from a lead to a non-lead position like Carter did. PRSOF 19.** *See De,* **912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by**

or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further oppose the fact that Carter was "suddenly" reassigned as an incomplete citation to the record, as Carter was on a disability leave in 2016 when Zizzo was first assigned to the de-icer in 2016, and he kept that assignment in 2017 upon Carter's return. (Carter Dep., Ps' Ex. 2, at p. 70:15:25 & 71:1–3). Moreover, Carter testified that she was given her new assignment by the foremen—Locelso and Hector Tellado. *Id.* Defendants further object to the fact that Vazquez saw Zizzo at campaign events as immaterial as those events occurred outside of the statute of limitations in 2015 (Vasquez Dep, Ps' Ex. 3, at p. 92:1–11), and moreover, this fact is immaterial as there is no evidence that Zizzo attended campaign events at Helm's request, or that Zizzo's attendance at those events were the reason he was named de-icer lead in 2016 while Carter was on leave. (Carter Dep., Ps' Ex. 2, at p. 70:15-25 & 71:1–3). Notwithstanding these objections, Defendants admit that Vazquez saw Zizzo at campaign events in 2015. Defendants admit that Carter was reassigned by the Foremen from the de-icer position after her return from a leave of absence, and Defendants deny that "Bill Helm and Kevin Martin reassigned Russ Zizzo to the LEAD position" and further deny that "Kevin Martin told her [Helm reassigned Zizzo] in his office in October 2017" as Carter's deposition testimony contradicts this statement. Carter testified that Helm told her it was Martin's decision as to who was going to be leads. (Carter Dep., Ps' Ex. 2; 44:4-46:6), and Carter further testified that Martin told her it was his [Martin's] decision to put Zizzo at the "de-icer farm." (Carter Dep., Ps' Ex. 2; 39:7-40:18). Defendants further dispute that Bill Helm and Kevin Martin made the reassignment. *See* PRSOF ¶37.

19. When Carter was approached Kevin Martin's office in October 2017, she ran into Foreman John

Locelso and asked him why she was not on the LEAD list, and Locelso told her "I had nothing to do with this." Carter Deposition, Ex. 2, p.37:13-24, p.38:1-4. Once in Martin's office, Carter asked him why she was not on the LEAD list for the fall 2017 winter program, and Martin told her that it was his decision to put Russ Zizzo in the de-icer farm as the LEAD. Carter Deposition, Ex. 2, p.40:1-16. About half an hour after she spoke with Martin, she spoke with Foreman John Locelso again, who told her that "he was told by Kevin Martin and Bill Helms that the foremen had no decision in who was going to be leads that year," and he was asked to leave the office when Martin and Helm were making out the lead list. Carter Deposition, Ex. 2, p.43:3-12.

**RESPONSE: Defendants object to these facts as they fail to comply with L.R.56.1(a)(3) and are immaterial because Carter is not a plaintiff to this matter, and neither plaintiff is alleging that they were removed from lead positions, as Carter contends. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further objects to this paragraph as it contains inadmissible hearsay and double hearsay. *Bordelon v. Board of Education of the City of Chicago*, 811 F.3d 984, 991-2 (7th Cir. 2016)(hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial.) Defendants affirmatively state that the referenced testimony identifies hearsay statements unsupported by admissible evidence identified in the record. *Id., see also Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998)(out-of-court statements made by non-party employees concern[ing] matters outside of the declarants' scope of employment are not party admissions). Defendants further object to any assertion**

**that Helm made the decision as to who would be lead as this is contradicted by Carter's**
**testimony. Carter testified that Helm told her it was Martin's decision as to who was going**
**to be leads. (Carter Dep., Ps' Ex. 2; 44:4-46:6), and Carter further testified that Martin told**
**her it was his [Martin's] decision to put Zizzo at the "de-icer farm." (Carter Dep., Ps' Ex. 2;**
**39:7-40:18). Notwithstanding said objections, Defendants dispute that it was Helm and**
**Martin's decision to remove Carter from the deicer farm and further dispute that the**
**foreman did not make the lead assignments that year.** ***See* PRSOF ¶37.**

20. Carter asked Bill Helm if he could drive the labor truck since she was no longer assigned to the
de-icer farm LEAD position, and he told her "fine" and he would call downstairs and tell the foremen
to assign her the labor truck. Carter Deposition, Ex. 2, p.47:2-23. She was subsequently assigned the
labor truck. Carter Deposition, Ex. 2, p.48:1-14.

**RESPONSE: Defendants object to these facts as they fail to comply with L.R.56.1(a)(3)**
**and are immaterial because Carter is not a plaintiff to this matter, and neither plaintiff is**
**alleging that they were removed from lead positions, as Carter contends she was.** ***See De*,**
**912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or**
**"nothing more than purely speculative factual allegations" are improper under Local Rules**
**56.1 and further finding the assertion of facts not supported by or misstating the record**
**should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.*, 424 F.3d at 674).**
**Notwithstanding said objections, Defendants admit for the purposes of summary judgment**
**only that paragraph 20 accurately cites Carter's deposition testimony.**

21. Carter testified that if a driver is assigned as a LEAD they get more overtime
opportunities because every time there is a call out during the snow program, the LEADs get
called out first, before any other drivers. Carter Deposition, Ex. 2, p.59:15-24, p.60:1-10.

**RESPONSE: Defendants object to these facts as they fail to comply with L.R.56.1(a)(3) and are immaterial because neither plaintiff is alleging that they were removed from Lead positions, as Carter contends she was.** *See De***, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing** *Roger Whitemore's Auto. Servs., Inc.,* **424 F.3d at 674). Notwithstanding said objections, Defendants admits that Leads get called out first before regular MTDs, and that Leads come in a half hour earlier than regular drivers. Carter Dep., Ex. 2, p. 59:22–24 & 60:7–20. Defendants further admit that leads have more overtime opportunities "just by the callouts".** *Id.*

22. Wilson Vazquez is an Equipment Training Specialist with the Department of Aviation. Vazquez Deposition, Ex. 3, p.10:4-11. Within a week of Bill Helm starting at DOA as Deputy Commissioner, Helm started positioning himself to earn Vazquez' support for Mayor Emmanuel's reelection campaign. Vazquez Deposition, Ex. 3, p.46:9-24. Vazquez testified that Helm asked him to help out with Alderman Pat O'Connor's reelection campaign. Vazquez Deposition, Ex. 3, p.46:114. Helm asked Vazquez and Hernandez for help putting groups together to help out with the Mayor's election campaign. Vazquez Deposition, Ex. 3, p.48:10-17. Helm requested meetings with Vazquez and Hernandez to discuss political work, and these meetings occurred on working time and City property. Vazquez Deposition, Ex. 3, p.48:14-24. Vazquez felt compelled to attend these meetings with Bill Helm because "[h]e's the Deputy Commissioner." Vazquez Deposition, Ex. 3, p.49:1-5.

**RESPONSE: Defendants object to the facts related to Helm's request because they occurred in 2015 and therefore are outside the statute of limitations, and thus are**

immaterial and fail to comply with L.R.56.1(a)(3). *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit for the purposes of summary judgment only that Vazquez testified as such to the extent these events occurred at the latest in April 2015.[2] Defendants further admit Wilson Vazquez is an Equipment Training Specialist with the Department of Aviation.

23.  Helm asked Vazquez and Hernandez to provide political help to Pat O'Connor's two precincts, and with the Mayoral election, and also if they could help with Alderman Suarez's ward. Vazquez Deposition, Ex. 3, p.49:17-23. Helm specifically asked Vazquez and Hernandez for assistance in getting signatures, passing out flyers, and fundraising for Pat O'Connor. Vazquez Deposition, Ex. 3, p.50:1-13.

**RESPONSE: Defendants object to the facts related to Helm's requests as immaterial and outside the statute of limitations as they occurred in 2015.** *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit for the purposes of summary judgment only that Vazquez testified as cited in paragraph 23 to the extent these events occurred at the latest in April 2015.

---

[2] Publicly available records show that the last mayoral election that Emmanuel participated in was a runoff held on April 7, 2015. https://chicagoelections.gov/en/election-results-specifics.asp

24. Vazquez and Hernandez were asked by Helm to help out with political work for Alderman Ray Suarez, whom Vazquez did not know, never had any dealings with, did not live in his ward, and had no position on his policies. Vazquez Deposition, Ex. 3, p.60:14-24.

**RESPONSE: Defendants object to the facts related to Helm's requests as immaterial and outside the statute of limitations as they occurred in 2015 so it fails to comply with L.R.56.1(a)(3). *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit for the purposes of summary judgment only that Vazquez testified as cited in paragraph 24 to the extent these events occurred at the latest in April 2015.**

25**.** Vazquez testified that he did not even know Pat O'Connor at the time he was asked to do work for him by Helm, and that he did not do work for O'Connor out of any feeling of personal support beyond Helm asking him to do it. Vazquez Deposition, Ex. 3, p.61:15-24, p.62:1-4.

**RESPONSE: Defendants object to the facts related to Helm's requests as immaterial and outside the statute of limitations as they occurred in 2015. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit for the purposes of summary judgment only that Vazquez testified as cited in paragraph 25 to the extent these events occurred at the latest in April 2015.**

26.     Vazquez testified that he was afraid to say no to Helm's requests for political work because he feared he would be punished if he did not. Vazquez Deposition, Ex. 3, p.63:1-4.

**RESPONSE: Defendants object to the facts related to Helm's requests as immaterial and outside the statute of limitations as they occurred in 2015. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit for the purposes of summary judgment only that Vazquez testified as cited in paragraph 26 to the extent these events occurred at the latest in April 2015.**

27. Vazquez also testified that he was solicited by Nick Thome to give Helm money for Christmas in "2013 or 2014," and that he was told everyone in the training section was giving him $650. Vazquez Deposition, Ex. 3, p.65:13-24.

**RESPONSE: Defendants object to the facts as immaterial and outside the statute of limitations as they occurred in 2013 or 14. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further object to this paragraph as it contains inadmissible hearsay and it, therefore, fails to comply with L.R. 56.1(b)(3)(c) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial.). *Bordelon*, 811 F.3d at 991-92. Defendants affirmatively state the**

referenced testimony identifies hearsay statements unsupported by admissible evidence identified in the record. *Id., see also Williams*, 137 F.3d at 951 (out-of-court statements made by non-party employees concern[ing] matters outside of the declarants' scope of employment are not party admissions). Additionally, Defendants object to the facts in paragraph 27 because they lack foundation to conclude that Thome's made that request at Helm's request and further lack foundation as to whether Helm actually received the money.(Vazquez Dep, Ps' Ex. 3, at p. 67:12–18). Vazquez's "understanding" that Helm got the money was solely based on the fact the money was placed in a Christmas card. *See Curry v.*, 2013 WL 1283477, at *8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Notwithstanding said objections, Defendants dispute these hearsay allegations.

28. Nick Thomas asked Vazquez to purchase tickets for Pat O'Connor fundraisers in the training department on two occasions. Vazquez Deposition, Ex. 3, p.70:1-20.

**RESPONSE: Defendants object to the facts related to Thome's request as immaterial and outside the statute of limitations as they occurred in 2014-2015 *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further object to this paragraph as it contains inadmissible hearsay and it, therefore, fails to comply with L.R. 56.1(b)(3)(c) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial.). *Bordelon*, 811 F.3d at 991-92. Additionally, Defendants object to the facts in paragraph 28 because they lack foundation to conclude that Thome's made that request at Helm's request. *See Curry,***

**2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local**

**Rule 56.1, lack of foundation, and hearsay). Notwithstanding said objections, Defendants**

**admit Thome requested that Vazquez purchase tickets to an O'Connor event in 2015.**

29. Vazquez was asked to sign off on overtime slips by Nick Thome, to which Vazquez said no but confirmed that "everything always got back to Bill Helm." Vazquez Deposition, Ex. 3, p.74:1-9.

**RESPONSE: Defendants object to the facts in paragraph 29 as immaterial. Vasquez**

**testified that he would not sign overtime sheets for MTDs who worked in the training**

**section because he (Vasquez) was not a supervisor and did not think it was appropriate**

**for him to sign an MTD's overtime sheet. (Vazquez Deposition, Ps' Ex. 3, p.74:1-22)**

**Whether Vasquez would or would not sign off on Nick Thome or other MTD's overtime**

**sheets is immaterial to this case. *See De*, 912 F. Supp. 2d at 712-13 ("vague,**

**argumentative, immaterial, or conclusory assertions" or "nothing more than purely**

**speculative factual allegations" are improper under Local Rules 56.1 and further finding**

**the assertion of facts not supported by or misstating the record should be disregarded)**

**(citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Additionally, Defendants**

**object to the facts in paragraph 29 because they lack foundation to conclude that**

**"everything gets back to Bill Helm". *See Curry*, 2013 WL 1283477, at \*8 (striking**

**supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and**

**hearsay). Notwithstanding said objections, Defendants admit for summary judgment**

**purposes only that Vazquez refused to sign off on overtime slips by Nick Thome.**

**Defendants dispute that "everything always got back to Bill Helm".**

30. After Bill Helm became Deputy Commissioner, he created overtime specifically for drivers assigned to the training department, but since Vazquez refused to sign and give donations to Pat

O'Connor, his overtime was reduced and others such as Nick Thome and Tomasz Dorosz were given more overtime. Vazquez Deposition, Ex. 3, p.75:10-24, p.76:1-6.

**RESPONSE: Defendants object to the facts in paragraph 30 as conclusory, speculative, and immaterial to the extent the refusals occurred outside the statute of limitations as Vazquez is surmising that Helm reduced his overtime without evidence in the record. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Additionally, Defendants object to the facts in paragraph 30 because they lack foundation to conclude that Helm reduced Vazquez's overtime. *See Curry*, 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Moreover, this testimony reflects pure speculation into Helm's state of mind, and consists entirely of speculation and guesswork, including guessing the states of minds of their supervisor. *See Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460–61 (7th Cir. 2014)(personal knowledge can include reasonable inferences, but it does not include speculating as to state of mind). Notwithstanding said objections, Defendants dispute the conclusory allegation that Vazquez received less overtime because he refused to give donations to Pat O'Connor or sign petitions for him. Defendants further dispute that Thome and Dorosz were given more overtime for doing political work.**

31. Vazquez identified Exhibit 55 as reflecting a holiday get together from Pat O'Connor that he and Hernandez went to because "[t]he rest of the training department was gonna be there." Vazquez Deposition, Ex. 3, p.76:19-24, p.77:1-10. He recalled seeing Gina Michalik, Oscar Polanco, Bill Helm,

Kevin Martin, Pat O'Connor and about "50 to 100" other people from the Department of Aviation attended. Vazquez Deposition, Ex. 3, p.78:1-24. Vazquez went because "we knew that if we didn't go, he would say something," he referring to Bill Helm. Vazquez Deposition, Ex. 3, p.78:14-19. Vazquez had observed John Revere at Pat O'Connor's campaign office over two to three years. Vazquez Deposition, Ex. 3, p.91:6-21.

**RESPONSE: Defendants object to the facts in paragraph 31 as conclusory, speculative, and immaterial because the email in Ex. 55 was from Pat O'Connor inviting Vazquez and Hernandez to the get together and the email was not from Helm. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Additionally, Defendants object to the facts in paragraph 31 because they lack foundation to conclude that Helm would say something if they did not go and that the MTDS attended at Helm's request. *See Curry*, 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Moreover, this testimony is pure speculation into Helm's state of mind, and consists entirely speculation and guesswork, including guessing the states of minds of their supervisor. *See Widmar,* 772 F.3d at 460–61 (personal knowledge can include reasonable inferences, but it does not include speculating as to state of mind). Notwithstanding said objections, Defendants dispute that Helm "would say something" if Vazquez and Hernandez did not attend the get together alleged in paragraph 31. Defendants admit the remaining facts for the purposes of summary judgment only.**

32. Once Bill Helm became Deputy Commissioner, Vazquez was no longer allowed to work

25

overtime as an escort, which he had been able to do prior to Bill Helm. Vazquez Deposition, Ex. 3, p.82:1-10.

**RESPONSE: Defendants object to the facts in paragraph 32 as conclusory, speculative, and immaterial because Vazquez is not an MTD like the Plaintiffs, but an equipment training specialist (Vazquez Dep., Ex. 3, at p. 18:6–14), so his overtime opportunities are different than MTDs. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Additionally, Defendants object to the facts in paragraph 32 because they lack foundation to conclude that Helm prevented Vazquez from getting escort opportunities. *See Curry*, 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Notwithstanding said objections, Defendants dispute that Helm prevented Vazquez from getting escort opportunities.**

33. Vazquez recalled being asked by Nick Thome to volunteer for Senator Tom Cullerton's Reelection, and confirmed that "we were expected to go to this," to which Vazquez was referring to the event described in the text message at Exhibit 57. Vazquez Deposition, Ex. 3, p.94:5-23.

**RESPONSE: Defendants object to these facts as the text referenced in Ex. 57 occurred outside the statute of limitations (September 24, 2016) and it asks for "material" to be returned by October 6, 2016, also outside the statute, so it fails to comply with L.R.56.1(a)(3) as immaterial. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are**

improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further object that the facts in paragraph 33 are immaterial because Thome is not a defendant and there is no evidence showing that Thome acted at the direction of Helm or another supervisor. Additionally, Defendants object to the facts in paragraph 33 because they lack foundation to conclude that Helm "expected" Vazquez to volunteer. *See Curry,* 2013 WL 1283477, at *8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Defendants further object to this paragraph as it contains inadmissible hearsay and it, therefore, fails to comply with L.R. 56.1(b)(3)(c) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial.). *Bordelon,* 811 F.3d at 991-92. Defendants affirmatively state that the referenced testimony identifies hearsay statements unsupported by admissible evidence identified in the record. *Id., see also Williams,* 137 F.3d at 951 (out-of-court statements made by non-party employees concern[ing] matters outside of the declarants' scope of employment are not party admissions). Notwithstanding said objections, Defendants dispute the facts in paragraph 33.

34. Vazquez testified that he made a call to a friend to get Bill Helm to back off on political work, and as a result of that Joe Alesia, Airport Manager, came to him and indicated the Bill Helm was going to start monitoring Vazquez' attendance. Vazquez Deposition, Ex. 3, p.99:3-17.

RESPONSE: Defendants object to these facts as they occurred in 2014 (Ps' Ex. 3, at p. 101:10–11) outside the statute of limitations, and are thus immaterial and violate L.R.56.1(a)(3). *See De,* 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by

or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Additionally, Defendants object to the facts in paragraph 34 because they lack foundation to conclude that Helm was monitoring Vazquez's attendance. *See Curry,* 2013 WL 1283477, at *8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Defendants further object to this paragraph as it contains inadmissible hearsay and it, therefore, fails to comply with L.R. 56.1(b)(3)(c) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial.). *Bordelon,* 811 F.3d at 991-92. Defendants affirmatively state the referenced testimony identifies hearsay statements unsupported by admissible evidence identified in the record. *Id., see also Williams,* 137 F.3d at 951 (out-of-court statements made by non-party employees concern[ing] matters outside of the declarants' scope of employment are not party admissions). Notwithstanding said objections, Defendants dispute that Bill Helm was going to start monitoring Vazquez's attendance because of the phone call Vazquez made. Defendants admit that Vazquez made a call to a political friend regarding Helm in 2014.

35. Vazquez testified that he and Hernandez met with Commissioner Robye Scott and informed her about the improper overtime distribution, including that Dorosz and Thome had inordinate amounts of overtime. Vazquez Deposition, Ex. 3, p.113:1-10. They also brought up that Helm was requiring drivers to work politics and go to political functions, and Scott wrote this down and claimed that she contacted City Hall about it. Vazquez Deposition, Ex. 3, p.114:123. Notably, Helm did not "retire" until August 2019. Helm Dep., Ex. 3, at p. 8:1-23.
**RESPONSE: : Defendants object to the fact Plaintiff's refer to Helm's retirement in argumentative terms ("retire") and further object to the term "City Hall" as vague since it**

can refer to numerous employees within several departments.[3] *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants dispute that Robye Scott was a Commissioner. Defendants admit for summary judgment purposes only that Vasquez testified he complained to Deputy Commissioner Robye Scott as cited in Paragraph 35. Defendants admit Helm retired in August 2019.

36. Hector Tellado is a foreman at the Department of Aviation. Tellado Deposition, Ex. 5, p.7:11-14, p. 8:1-12. Bill Helm asked Tellado numerous times to do political work from the start of Helm's employment to about a year prior to Tellado's deposition in this case. Tellado Deposition, Ex. 5, p.14:5-13. Helm asked Tellado to go to political functions, pass out petitions, knock on doors, and walk precincts. Tellado Deposition, Ex. 5, p.14:22-24, p.15:1-3. Tellado "absolutely" felt obligated to perform this work. Tellado Deposition, Ex. 5, p.16:1-6. Tellado did not personally support Pat O'Connor even though he felt obligated to work for him via Helm. Tellado Deposition, Ex. 5, p.17:6-10. Tellado recalled being asked to canvass for Jack Franks, recalled meeting at a Panera Bread for such purpose, and recalled seeing other DOA drivers there. Tellado Deposition, Ex. 5, p.32:3-7, p.33:1-14. Tellado felt compelled to canvass for Jack Franks. Tellado Deposition, Ex. 5, p.33:15-17.

RESPONSE: Defendants object to these facts to the extent that as they occurred outside the statute of limitations (up to November 18, 2016 for First Amendment claims, and up to November 18, 2017 for IWA Section 20 claims) and as immaterial. *See De*, 912 F. Supp. 2d at

---

[3] Vasquez indicated in the cited testimony he did not know whom Scott meant when she referred to City Hall, but he thought "City Hall" could possibly have meant the OIG. Vazquez Dep., Ex. 13, at p. 114:6–14.

712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit solely for the purposes of summary judgment that Tellado testified as described in paragraph 36.

37. Tellado saw many other DOA drivers performing similar political work, including Jay Revere, Robert Costello, Oscar Polanco, John Locelso, Kevin Martin, Mike Bertoni, Lisa Ellerman, Gina Michalik, David Sharkey, Andrew Adamowski, and Nick Thome. Tellado Deposition, Ex. 5, p.16:12-23.

**RESPONSE: Defendants object to these facts to the extent that as they occurred outside the statute of limitations (up to November 18, 2016 for First Amendment claims and up to November 18, 2017 for IWA Section 20 claims) and are immaterial. *See De,* 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). This claim lacks foundation because there is no evidence that these MTDs did "political work" at Helm's request. *See Curry,* 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Notwithstanding said objections, Defendants admit Tellado testified as described in paragraph 37.**

38. When Tellado wouldn't go and help with political work, Helm kept giving him suspensions, transferring his shift, had his work location changed, had his office taken away, and retaliated against

him numerous times. Tellado Deposition, Ex. 5, p.18:2-22, p.19:10-24. On one occasion when Helm gave him a five-day suspension, Helm said to Tellado, "you need to learn who your friends are and pick the right friends and join the right team." Tellado Deposition, Ex. 5, p.19:1-9.

**RESPONSE: Defendants object to these facts to the extent that as they occurred outside the statute of limitations (November 17, 2016) and are immaterial as Tellado is not a plaintiff in this matter. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). This claim lacks foundation because there is no evidence that Helm suspended Tellado, transferred his shift or otherwise retaliated against Tellado because he stopped doing political work. *See Curry*, 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay). Moreover, this testimony is pure speculation into Helm's state of mind, and consists entirely of speculation and guesswork, including guessing the states of minds of their supervisor. *See Widmar*, 772 F.3d at 460–61 (personal knowledge can include reasonable inferences, but it does not include speculating as to state of mind.) Notwithstanding said objections, Defendants dispute that Helm retaliated against Tellado in any way for refusing to help with political work.**

39. When shown Deposition Exhibit 62, Tellado identified in the photograph DOA employees Andrew Adamowski, Kevin Martin, and Robert Castillo. Tellado Deposition, Ex. 5, p.23:4-23. When shown Deposition Exhibit 42, Tellado recollected attending an organizational meeting for Bill Helm around April 30, 2016 to go campaigning for Pat O'Connor. Tellado Deposition, Ex. 5, p.27:9-23. Tellado confirmed that there were about 75 people at the meeting as stated in the text message, and

Tellado confirmed that it was largely composed of DOA drivers. Tellado Deposition, Ex. 5, p.28:13-24, p.29:1-11. Bill Helm was there. Tellado Deposition, Ex. 5, p.29:8-9.

**RESPONSE: Defendants object to these facts as they occurred outside the statute of limitations (April 30, 2016) so this paragraph fails to comply with L.R.56.1(a)(3) and are immaterial. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). This claim lacks foundation because there is no evidence that these 75 MTDs attended the political functions at Helm's request --- meetings which Tellado also attended. *See Curry*, 2013 WL 1283477, at \*8 (striking supplemental exhibits for failure to comply with Local Rule 56.1, lack of foundation, and hearsay.) Notwithstanding said objections, Defendants admit Tellado testified as described in paragraph 39.**

40. Nick Thome would on a regular basis mention that he needed to get people together "because Bill Helm wanted workers to go out in the field and do political work." Tellado Deposition, Ex. 5, p.30:15-19.

**RESPONSE: Defendants object to these facts as they occurred outside the statute of limitations (2015, Ex. 4, at p. 57:9–24) so it fails to comply with L.R.56.1(a)(3) and are immaterial. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). These facts are also immaterial because Plaintiffs have not identified Thome as a person responsible for assignments, overtime or other adverse actions, and**

further Plaintiffs do not connect these facts in any way to Helm. Defendants further object to this paragraph as it contains inadmissible hearsay and it, therefore, fails to comply with L.R. 56.1(b)(3)(c) (hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial.). *Bordelon*, 811 F.3d at 991-2. Defendants affirmatively state that the referenced testimony identifies hearsay statements unsupported by admissible evidence identified in the record. *Id., see also Williams*, 137 F.3d at 951 (out-of-court statements made by non-party employees concern[ing] matters outside of the declarants' scope of employment are not party admissions). Notwithstanding said objections, Defendants dispute the inadmissible hearsay statement.

41. Tomasz Dorosz was a Pool Motor Truck Driver assigned to the Training Section at DOA. Dorosz Deposition, Exhibit 4, p.12:1-5, p.31:4-20. He was approached by Nick Thome after he started working in the Training Section, and Thome let him know that it was a privilege to be in the Training Section, and Dorosz needed to help out with politics, such as by getting signatures. Dorosz Deposition, Exhibit 4, p.46:2-5. Thome told him that Helm needed help getting signatures for Democratic candidates, and Dorosz, never having done politics and being a libertarian, initially balked. Dorosz Deposition, Exhibit 4, p.47:2-14. He recalled Thome asking him at least three times to help out in Pat O'Connor's ward. Dorosz Deposition, Exhibit 4, p.50:6-22.

**RESPONSE: Defendants object to these facts as they occurred outside the statute of limitations (2015, Ex. 4, at p. 57:9–24) so they fail to comply with L.R.56.1(a)(3) and are immaterial.** *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs.,*

***Inc.,*** **424 F.3d at 674). These facts are also immaterial because Plaintiffs have not identified**

**Thome as a person responsible for assignments, overtime or other adverse actions, and**

**further Plaintiffs do not connect these facts in any way to Helm. Defendants further object**

**to this paragraph as it contains inadmissible hearsay and it, therefore, fails to comply with**

**L.R. 56.1(b)(3)(c) (hearsay is inadmissible in summary judgment proceedings to the same**

**extent it is inadmissible in a trial.).** ***Bordelon,*** **811 F.3d at 991-92. Defendants affirmatively**

**state the referenced testimony identifies hearsay statements unsupported by admissible**

**evidence identified in the record.** ***Id., see also Williams,*** **137 F.3d at 951 (out-of-court**

**statements made by non-party employees concern[ing] matters outside of the**

**declarants' scope of employment are not party admissions). Notwithstanding the**

**objections, Defendants dispute the inadmissible hearsay statements.**

42. In 2016, Dorosz had largely stopped doing any political work for Helm, although he was

aware that others in the Training Section were continuing to do such work. Dorosz Deposition,

Exhibit 4, p.57:6-24. Dorosz identified himself in photographs at Deposition Exhibit 43 doing

political work. Dorosz Deposition, Exhibit 4, p.59:1-19. He identified the St. Hillary church/school

pictured in Exhibit 43 as a location where he and other drivers would go to political meetings.

Dorosz Deposition, Exhibit 4, p.62:8-24. He identified Kevin Martin and John Locelso in pictures at

political events in Deposition Exhibit 43. Dorosz Deposition, Exhibit 4, p.64:15-17.

**RESPONSE: Defendants object to these facts as they occurred outside the statute of**

**limitations so they fail to comply with L.R.56.1(a)(3) and are immaterial.** ***See De,*** **912 F.**

**Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or**

**"nothing more than purely speculative factual allegations" are improper under Local Rules**

**56.1 and further finding the assertion of facts not supported by or misstating the record**

**should be disregarded) (citing** ***Roger Whitemore's Auto. Servs., Inc.,*** **424 F.3d at 674).**

Defendants further object to the facts to the extent that they contain incomplete or inaccurate citations to the record. *Id.* Notwithstanding said objections, Defendants admit that Dorosz was "definitely" not asked by Thome to do "political work" in 2016 but others were still performing such work in 2016. Ps' Ex. 4, at p. 57:9–24. Defendants further admit that Dorosz identified the persons and locations in the photographs in Ex. 43.

43. Dorosz testified that at the start of the election season for Alderman O'Connor and Mayor Emmanuel, "[w]e were forced to go to all the events." Dorosz Deposition, Exhibit 4, p.65:1-7.

**RESPONSE: Defendants object to this fact as it occurred in 2015 so it fails to comply with L.R.56.1(a)(3) because it is immaterial and outside the statute of limitations. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Defendants further object to the term "forced" as vague and lacking foundation. Notwithstanding said objections, Defendants admit that Dorosz testified that he attended campaign events through April 2015, Defendants dispute Dorosz was "forced" to attend the events.[4]**

44. On one occasion, Helm asked Dorosz, Thome, and Termini to go to Pat O'Connor's campaign office at Lawrence and Western on working time and set up networks and computers. Dorosz Deposition, Exhibit 4, p.70:5-19, p.70:1-19, p.73:20-24, p.74:1-10.

**RESPONSE: Defendants object to this fact as it occurred in 2015 so it fails to comply with L.R.56.1(a)(3) because it is immaterial and outside the statute of limitations. *See De*, 912**

---

[4] Publicly available records show that the last mayoral election that Emmanuel participated in was a runoff held on April 7, 2015. https://chicagoelections.gov/en/election-results-specifics.asp

**F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit the facts the extent they occurred during 2015 Aldermanic and Mayoral Elections and runoff. Ex. 4, at p. 73:20–24 & 74:1–9 (stating that the work was done prior to the Rahm Emmanuel mayoral runoff).[5]**

45. Dorosz was able to identify photographs in Deposition Exhibit 60 as notes he had seen in Nick Thome's work office assigning drivers to various areas for political work. Dorosz Deposition, Exhibit 4, p.108:1-24, p. 109:1-24, p. 110:1-24. The notes say things like, for example, "Precinct 46 *** Kelee/Jay/Mannerino ***" Dorosz Deposition, Exhibit 4, p.108:1-24 (referring to Deposition Exhibit 60, Plaintiff 385 for example).

**RESPONSE: Defendants object to this fact as it occurred outside the statute of limitations and therefore it is immaterial and fails to comply with L.R.56.1(a)(3). *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). These allegations are further immaterial because Plaintiffs have not identified Thome as a person responsible for assignments, overtime or other adverse actions, and further Plaintiffs do not connect these facts in any way to Helm. Notwithstanding said objections, Defendants admit.**

---

[5] Publicly available records show that the only mayoral runoff that Emmanuel participated was held on April 7, 2015. https://chicagoelections.gov/en/election-results-specifics.asp

46. Helm had texted Dorosz or Termini to pick up something from Pat O'Connor's Office, and they went and picked it up in a City vehicle on City time. Dorosz Deposition, Exhibit 4, p.124:1-21.

**RESPONSE: Defendants object to this fact as it occurred in 2015 so it fails to comply with L.R.56.1(a)(3) because it is immaterial and outside the statute of limitations. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit to the extent those texts occurred in 2015. Ps' Ex. 4, at p. 124:1–10.**

47. Dorosz reported all of Helm's political activities to the OIG in or around 2017. Dorosz Deposition, Exhibit 4, p.121:2-24, p.122:1-24, p.123:1-24.

**RESPONSE: Defendants object to the fact that Dorosz complained to the OIG about Helm's "political activities" in or around 2017 because it fails to comply with L.R.56.1(a)(3) as it is immaterial as he is not a plaintiff to this case. Defendants further object to the term "political activities" as vague. *See De*, 912 F. Supp. 2d at 712-13 ("vague, argumentative, immaterial, or conclusory assertions" or "nothing more than purely speculative factual allegations" are improper under Local Rules 56.1 and further finding the assertion of facts not supported by or misstating the record should be disregarded) (citing *Roger Whitemore's Auto. Servs., Inc.,* 424 F.3d at 674). Notwithstanding said objections, Defendants admit Dorosz reported to the OIG the "political work" he had been asked to do, the "political events" he attended, as well as his time in the training program. Ps' Ex. 4, at pp. 122:1–13 & 123:2–5.**

Dated: March 4, 2021     Respectfully submitted,

            CELIA MEZA
            Acting Corporation Counsel of the City of
            Chicago for Defendant City of Chicago

            */s/ Jessica R. Durkin*
            JESSICA R. DURKIN
            SCOTT CROUCH
            Assistants Corporation Counsel
            Employment Litigation Division
            2 North LaSalle Street, Room 640
            Chicago, Illinois 60602
            (312) 744-2836/8369
            jessica.durkin@cityofchicago.org
            scott.crouch@cityofchicago.org

            Special Assistant Corporation Counsel for
            Defendant William Helm

            */s/ James P. Fieweger*
            James P. Fieweger, #6206915
            jpfieweger@michaelbest.com
            Carolyn E. Isaac #6324095
            ceisaac@michaelbest.com
            MICHAEL BEST & FRIEDRICH
            LLP
            444 West Lake Street, Suite 3200
            Chicago, IL 60606
            (312) 222-0800